## A95A0806. HICKMAN v. ALLEN.
### (458 SE2d 883)

BIRDSONG, Presiding Judge.

Charlotte Hickman appeals the grant of directed verdict to defendant Margaret C. Allen, her former landlord, in Hickman's suit for damages on account of being robbed, raped, strangled and sodomized by Eddie Bradford. Bradford was a worker authorized by Allen's property manager Suzanne Roberts to perform repair work in Hickman's cottage. Hickman sued Allen, Mrs. Roberts, Mrs. Roberts' husband O. M. Roberts and his company Roberts Development, Inc. (RDI), which employed Bradford. Allen was released by directed verdict. After four days of trial, the jury returned a verdict against Mrs. Roberts, Mr. Roberts and RDI. *Held*:

Allen contends, and the trial court found, that the question is whether Allen assumed the right to control the execution of the work, that the evidence "sufficiently" establishes that Allen totally surrendered control of the premises to Mrs. Roberts to make repairs, that Allen did not supervise or inspect any of the work, that she could not

reasonably have foreseen workers would have had unsupervised access to keys in the premises and could not reasonably have foreseen the conduct which caused the injuries to Hickman.

The standard used by the trial court to determine potential liability of the landlord is incorrect.

Generally an employer is not liable for the torts of an independent contractor or its employee because the employer does not control the manner in which the independent contractor's work is done; but where the duty owed to an invitee by a landlord is statutory and nondelegable, the landlord may not escape liability by claiming the negligent act was done by a property manager or other "filter." See *Peachtree-Cain Co. v. McBee*, 254 Ga. 91 (327 SE2d 188), where it was held that a property owner was responsible for the intentional torts of an employee of a security agency hired by a property manager. Under Georgia law, a landowner is liable to invitees for injuries caused by his failure to use ordinary care in keeping the premises safe. OCGA § 51-3-1. This is a statutory duty and is nondelegable. As for the contention that the landlord would not in any case be liable for Bradford's intervening criminal act, a defendant is not insulated from liability by the intervention of an illegal act which proximately causes an injury if the defendant had reasonable grounds to apprehend such a criminal act would be committed. *Confetti Atlanta v. Gray*, 202 Ga. App. 241, 242 (414 SE2d 265); *Thurmond v. Richmond County Bd. of Ed.*, 207 Ga. App. 437, 440 (4) (428 SE2d 392). The proper inquiry to determine whether Allen performed her nondelegable duty to use ordinary care is thus whether there was evidence from which a jury could conclude Allen had reasonable grounds to believe a person of criminal propensity might be hired to work on the premises, might obtain a key to the premises if keys were accessible and might wrongfully enter the premises to harm a single female resident (*Confetti Atlanta v. Gray*, supra at 243), and, if so, whether Allen used ordinary care to keep these premises safe.

When the evidence is construed in favor of Hickman as respondent to Allen's motion for directed verdict (OCGA § 9-11-50; *Butler v. McCleskey*, 208 Ga. App. 341, 343 (430 SE2d 631); *Lawson v. Athens Auto Supply &c.*, 200 Ga. App. 609 (5) (409 SE2d 60)), there is ample evidence that Allen could reasonably have foreseen this occurrence. The evidence construed in favor of Hickman shows Allen knew that as landlord she had a duty to hire responsible agents. Allen initially intended another person to do the work in Hickman's cottage, and she obtained Hickman's key only after assuring Hickman that person was of good character and had worked for Allen for years in her home and on other property she owned; Allen thus induced Hickman to have an extra key made. That person became unavailable to do the work, and Allen authorized Mrs. Roberts to hire her husband and his

company to do the work. Roberts had employed Bradford for about seven months and made no background check on him. Bradford was a day worker. Roberts knew Bradford was a convicted felon and even took him to the probation office. Roberts told Mrs. Roberts that Bradford was on probation, but Mrs. Roberts denied having heard this; she did not know much about Bradford, and she never investigated him. Roberts knew that one of Bradford's co-workers, Rhoades, had been arrested for rape and had served time in prison; Roberts procured a lawyer for him on a charge of entering an automobile, to which Rhoades pled guilty, and Roberts even asked him if he had been raped in prison, yet Roberts allowed Rhoades in Hickman's cottage. All three of Roberts' workers, including Bradford, used cocaine at the work site. When working on properties his wife managed, Roberts got keys from her. Roberts provided a key to the three workers working on the Hickman cottage. The key was left in Roberts' unlocked pickup which was used on the jobs and was left at Roberts' house overnight, was driven by Bradford and was accessible to RDI workers. The key was kept in the truck on the left turn signal arm and was put there by his men. Roberts knew Bradford was aware of this. To Roberts' recollection, the key to Hickman's cottage was last in Bradford's possession. Roberts was never able to find the key to the Hickman cottage after Bradford had it. If Hickman had known her key would be left in an unlocked pickup truck overnight, she would never have given her key to Allen. On September 10, 1990, after working at the cottage and after using drugs and alcohol, Bradford, using the key which Roberts had left on the left turn signal arm, entered Hickman's cottage in the early morning hours. Hickman was awakened by Bradford's hands squeezing her throat. Bradford brutally beat her, raped and sodomized her.

The jury found that Roberts could reasonably foresee or should have foreseen these criminal acts, and the jury may likewise find Allen had reasonable grounds to apprehend that such criminal acts would be committed and that Allen failed to use ordinary care to guard against these acts. The evidence with all reasonable deductions does not *demand* a conclusion that, as landlord and having a nondelegable duty with regards to safety of her tenants' premises, she could not reasonably have foreseen that making a key accessible to casual workers might result in these consequences.

Whenever a party is entitled to a directed verdict, it should be granted (OCGA § 9-11-50), but when the erroneous grant of directed verdict to a defendant will require a new trial, and particularly where there is extensive evidence and debate as in this case, it is a wise exercise in judicial economy to let the jury decide the matter and then to grant a judgment n.o.v., rather than court the prospect of trying the entire matter again as to that defendant, with resulting

prejudice to all parties. See similarly *Lawson v. Athens Auto Supply,* supra.

*Judgment reversed. Johnson and Smith, JJ., concur.*

DECIDED JULY 3, 1995.

*McLain & Merritt, Albert J. Decusati, Jeffrey E. Hickcox,* for appellant.

*Greene, Buckley, Jones & McQueen, John D. Jones, Frank C. Schenck, Fortson, Bentley & Griffin, J. Edward Allen, Jr., Blasingame, Burch, Garrard & Bryant, E. Davison Burch,* for appellee.