A96A2087. FEGGANS et al. v. KROGER COMPANY.
(476 SE2d 822)

ELDRIDGE, Judge.

Appellants have appealed from the trial court's order granting summary judgment to appellee, The Kroger Company ("Kroger").

This lawsuit arises out of Ocie Feggans' alleged slip and fall that occurred on November 17, 1994, at the Kroger store located at 3251 Highway 5, in Douglasville, Georgia. Joseph Feggans is the spouse of Feggans and claims loss of consortium due to her injuries.

Feggans entered the Kroger store at approximately 1:50 a.m. As Feggans was walking past the cosmetic counter, on her way to the dairy section, she slipped on a watery type substance and fell. At the time of her fall, Feggans was looking at the floor, but did not see the water prior to her fall. However, Feggans was able to see the water, after it was pointed out to her by a witness to the incident, when she bent over and looked down at the floor. Feggans, after her fall,

observed additional streaks of water in the same path.

At the time of Feggans' fall, an employee of Precision Floor Care, who is not a party to this action, was cleaning appellee's floor, which included sweeping, mopping the floor with water, and buffing.

1. In appellants' first enumeration of error, appellants allege that it was error for the trial court to grant summary judgment to appellee "if such motion was granted based on defendant's claim that it was not in possession of the floor at the time of plaintiff's slip and fall."

Under OCGA § 51-2-4, "an employer generally is not responsible for torts committed by his employee when the employee exercises an independent business, and is not subject to the immediate direction and control of the employer." "However, an employer is liable for the contractor's negligence if he 'retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relationship of master and servant or so that an injury results which is traceable to his interference.' OCGA § 51-2-5 (5)." *Kraft General Foods v. Maxwell,* 219 Ga. App. 211 (464 SE2d 639) (1995).

Under Kroger's agreement with Precision Floor Care, other than specifying the general parameters for what must be cleaned and what services were to be provided, the manner, method, and means of the cleaning services were left entirely to Precision Floor Care. Precision Floor Care and its employees were able to operate the cleaning equipment and apply all cleaning materials under its own discretion and under its own supervision. Moreover, other than requiring Precision Floor Care to perform its work between the hours of 11:00 p.m. and 7:00 a.m., Kroger did not control specifically when any particular duties were to be performed. The only exception to this rule was if Precision Floor Care made a determination that the floor needed to be stripped. In such circumstances, Kroger management would then decide if the store needed to be closed or if only certain aisles had to be taped off and closed, and what would be the best time for such closure to occur so as not to affect business. This was not the case here.

Appellants assert that Kroger assumed part of the responsibility for training and disciplining the employees of Precision Floor Care. This is not true under the record before this Court. Kroger had only the "general right to order the work stopped or resumed, to inspect its process or to receive reports, to make suggestions or recommendations and to prescribe alterations and deviations" of the work performed, which does not establish that the proprietor exercised control over the manner in which the independent contractor did its work. *Englehart v. OKI America,* 209 Ga. App. 151, 152 (433 SE2d 331) (1993). "Such a general right does not mean that the contractor is

controlled as to his methods of work. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." Id. at 152.

In the case sub judice, James Gardener, who is the grocery manager for Kroger, testified in his deposition that he checks to make sure the floor care service has placed signs in the area on which the floor service is working. This fact alone does not establish that Kroger trains the employees of Precision Floor Care Service. It merely establishes that Kroger is insuring that Precision Floor Care is complying with their contractual obligations. As this Court has held in *Slater v. Canal Wood Corp. of Augusta*, 178 Ga. App. 877, 880 (345 SE2d 71) (1986), " '[t]he right to observe the fulfillment of the safety requirements with the right to order them fulfilled if the contractor did not do so in the contract is not such control of the work as intended by § 414 of the Restatement 2d, Torts, (or OCGA § 51-2-4) so as to impose liability on the defendant."

Appellants also contend that Kroger controlled the manner in which the floor service performed its job because the deposition testimony of James Gardener shows that Kroger controlled the order in which the services were performed on certain evenings by requiring Precision Floor Care to clean the non-grocery aisles first. However, appellants have misstated and misconstrued Gardener's testimony. Gardener testified, "We start at 10:00 at night spotting groceries. They spot the whole truck here, and they put it up which starts around midnight. It takes about two hours to put fifteen-hundred cases out. . . . We separate it per aisle back in the back room and bring them out. . . . I would basically say this is done before he actually starts mopping. Normally, his first — I don't know what his procedure is, to be honest with you; I would assume it's to sweep the floor first. I would think by the time he's ready to actually start mopping the truck has been processed." Gardener's testimony in no way shows Kroger controlled the manner in which Precision Floor Care performed its job. In fact, Gardener's testimony is that he does not know what the floor care procedure is.

Appellants also claim that Kroger controls the manner in which the floor service employees get paid by requiring Precision Floor Care to leave their employees' paychecks with Kroger on each Monday. Furthermore, appellants suggest that Kroger does not pay for services on evenings the floor care service does not work. These assertions by appellants do not establish that Precision Floor Care was an agent of Kroger. The deposition testimony of James Gardener shows that the employees for Precision Floor Care are paid by the owner of Precision Floor Care. The fact that appellee requires the checks to be left at Kroger to ensure the employees are paid by Precision Floor Care does not establish that appellee exercises control over the man-

ner in which the floor cleaner is paid, and that an agency relationship exists. Additionally, appellants' assertion that Kroger may deduct payment for services not performed does not establish an agency relationship between the two. Kroger has the right not to pay an independent contractor for services not performed. This Court finds that there is no genuine issue of material fact, and the undisputed facts, viewed in the light most favorable to the appellants, show it was not error for the trial court to grant summary judgment to appellee on the issue that Precision Floor Care was an independent contractor of Kroger.

However, even though Precision Floor Care is an independent contractor of appellee, and appellee could not be vicariously liable, appellee would still owe a duty to Feggans to exercise ordinary care to keep the premises and approaches safe unless Kroger had delivered full and complete possession of the premises to Precision Floor Care either on a temporary or permanent basis. *Little v. Liberty Savings Bank*, 191 Ga. App. 732 (382 SE2d 734) (1989); *Towles v. Cox*, 181 Ga. App. 194 (351 SE2d 718) (1986). In the case sub judice, appellee is a grocery retailer who was open for business. They did not exclude their customers from the premises or a portion of the premises during the time that Precision Floor Care swept, mopped with water, and buffed the floor. Even though James Gardener testified in his deposition that, when the cleaning service arrived, Kroger ceased to do their routine spot-check of the floor, there is conflicting testimony that indicates that Kroger may not have relinquished full and complete control of the floor. Employees of Kroger were present in the store during the time Precision Floor Care swept, mopped, and buffed the floor. On three to four nights during the week, around 10:00 p.m., Kroger stocked its shelves. While Kroger employees were stocking the shelves, they were often in the same location as the employee of Precision Floor Care. One of the people to whom Feggans reported her slip and fall was later identified as a Kroger stock person.

Furthermore, there is a conflict in the evidence as to who actually made the decision whether to close the entire store during a floor strip or only to close off certain aisles. William Snow, a co-manager of Kroger, testified that Kroger required Precision Floor Care to consult with Kroger on special events like floor strips, what sections needed to be done, and if the store needed to be closed, but the decision to close the store, or only certain aisles, was up to Precision Floor Care. However, James Gardener testified that Precision Floor Care would let him know in advance, he would talk with upper management, and they would decide if the store needed to be closed or if an aisle could be taped off.

Also, James Gardener testified that when he arrives at work, especially on nights when they are re-stocking the shelves, he makes

sure the employee of Precision Floor Care has "his signs and stuff" together.

Therefore, a material issue of fact exists, as to whether Kroger had turned full possession and control of the floor over to Precision Floor Care, which issue can only be decided by a jury, and it was error for the trial court to grant appellee's motion for summary judgment on this issue.

2. Appellants, in their second enumeration of error, contend that the trial court erred by granting appellee's motion for summary judgment, "if such motion was granted based on appellee's claim of lack of knowledge superior to plaintiff's knowledge of the hazardous condition which caused plaintiff's slip and fall."

"[A]n owner or occupier of land is liable in damages to invitees who come upon the land for injuries occasioned by his failure to exercise ordinary care in keeping the premises safe. [Cit.] Accordingly, an owner who has either actual or constructive knowledge of defects or dangers on the premises has a duty to warn others coming on the premises who do not have knowledge of the defects and/or dangers and who through the exercise of ordinary care would not discover them. [Cit.] Liability does not extend from ownership alone, but only from a breach of this duty. [Cit.]" *Murphy v. Blue Bird Body Co.*, 207 Ga. App. 853, 857 (429 SE2d 530) (1993). When an independent contractor is on the premises, and the owner or occupier has not delivered full possession and complete control of the premises, the owner or occupier of the premises must use ordinary diligence to insure that the property remains safe for invitees to the property. Such duty on the part of the owner or occupier of the premises is a nondelegable duty. See *Towles*, supra at 197.

" 'Ordinary diligence does not require an inspection of property in the absence of any reason for the owner to believe that such an inspection is necessary. (Cit.)' [Cit.]" *Towles*, supra at 196. However, in the case sub judice, appellee had reason to believe that such an inspection was necessary. Appellee had actual knowledge that Precision Floor Care was on the premises sweeping, mopping with water, and buffing the floor. Appellee knew customers were shopping in the store and that in the past Precision Floor Care had failed to post warning signs or to post warning signs adequately. At the time Feggans entered the store the circumstances were such that would " 'put an ordinarily prudent man on notice of the probability of danger[,]' " and it was foreseeable to appellee that an invitee could be injured if appellee did not use ordinary care to " 'guard, cover, or protect the defective portion of the premises. . . . [Cit.]' " Id. at 197. For appellee to be held liable for negligence, " " "it is not necessary that he should have been able to anticipate the particular consequences which ensued. It is sufficient if, in ordinary prudence, he might have fore-

seen that some injury would result from his act or omission, and that consequences of a generally injurious nature might result." (Cit.)' [Cit.]" Id.

There is contradictory evidence as to whether or not warning signs were posted on the premises, and if such warning signs were posted, whether they were posted in the area in which Feggans fell, or in the areas she had to walk through prior to her fall. Feggans testified that she did not see any warning signs before she slipped and fell, but that after she fell she noticed a warning sign and a mop bucket very close to the lane where the cash register was located. The cash register was not near the cosmetic counter where Feggans fell. However, Julia Revils, who is an employee of Kroger, testified that a warning sign had been placed at the front door and in the cosmetic area. William Snow testified that there were "floor signs down in front of the registers and in the entryway between the first register and the pharmacy section."

Furthermore, Feggans testified that when she walked through the front of the store, and until such time as she reached the area of the cosmetic counter, she was looking at the floor, and that her view of the floor was in no way obstructed. She further testified that she did not see the water prior to her fall, but was able to see the water, after it was pointed out to her by a witness to the incident, when she bent over and looked down at the floor.

Therefore, a material issue of fact exists as to appellee's claim of lack of knowledge superior to Feggans' knowledge of the hazardous condition which caused Feggans' slip and fall, and it was error for the trial court to grant appellee summary judgment on this issue.

*Judgment reversed. McMurray, P. J., and Johnson, J., concur.*

DECIDED OCTOBER 2, 1996.

*Rodney L. Eason*, for appellants.
*Webb, Carlock, Copeland, Semler & Stair, James R. Doyle II, Douglas A. Wilde*, for appellee.