A96A0952. CRAPP v. ELBERTA CRATE & BOX COMPANY.
(479 SE2d 101)

BLACKBURN, Judge.

Lossie Crapp appeals the grant of summary judgment to her employer, Elberta Crate & Box Company (Elberta), in her negligence

action. Crapp was left paralyzed after her former boyfriend, Earlich Denmark, shot her on the premises of Elberta before he committed suicide.

"The standard of review of the trial court's grant of defendant['s] motion for summary judgment is a de novo review of the evidence to determine whether there is any genuine issue of material fact as to the elements required to establish the causes of action stated by plaintiff in her complaint. The standard for granting summary judgment is that the moving party must demonstrate that there is no genuine issue of material fact, and that undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations omitted.) *Artlip v. Queler*, 220 Ga. App. 775, 776-777 (470 SE2d 260) (1996).

On the job site at Elberta in 1988, while in a jealous rage, Denmark had violently attacked another female co-employee whom he had been dating. Denmark threatened to hit that female co-employee with a board. Faced with suspension over the incident, Denmark quit his job but was rehired by Elberta in 1990.

On April 6, 1994, at Elberta's plant, Denmark became jealous after seeing Crapp talking to another man. Denmark physically attacked Crapp and "started swinging," knocking her to the ground. She cut her arm as she fell, and he continuously directed obscenities at her during the attack. Another employee had to physically pull Denmark off of Crapp. Crapp immediately reported the incident to her supervisor.

Jeffrey Weaver, an Elberta supervisor, fired Denmark on the spot for assaulting Crapp and told him to leave the premises. Elberta did not elect to mail Denmark's final check to him, deliver it to him, or otherwise make arrangements for Denmark to obtain his check without returning to the plant. With full knowledge of Denmark's propensity for violence and his attack that very day upon plaintiff, who remained on the job site following the attack, *Elberta specifically directed Denmark* to return to the premises at 4:00 p.m. to pick up his paycheck. Weaver testified that he did not even designate a specific place on Elberta's premises for Denmark to return: "I just told him to come back and see me and I'd have his check."

Although Elberta told Crapp that Denmark had been fired, it did not warn her that Denmark had been instructed to return to the premises later that day. Even though Denmark had been directed to return to the plant, Elberta took no action to protect the victim or to prevent another violent attack upon her by Denmark upon his return. When Denmark returned as directed, he confronted Crapp at her work station, shot her twice within two to three minutes, and committed suicide thereafter.

OCGA § 51-3-1 establishes the duty owed by a landowner or

occupier of land to those invited on his land: "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." Crapp was an invitee of Elberta, because "the relationship [was] one of mutual interest to the parties." (Citations and punctuation omitted.) *DeGracia v. Huntingdon Assoc., Ltd.*, 176 Ga. App. 495, 496 (2) (336 SE2d 602) (1985).

While a proprietor may generally avoid liability where there is an intervening criminal act of a third party upon an invitee, if the proprietor had reasonable grounds for apprehending that such criminal act would be committed or is reasonably to be anticipated, such as a history of similar criminal acts, the proprietor may be liable to the victim, despite the independent criminal act, and such issue is for jury determination. *Clark v. Carla Gay Dress Co.*, 178 Ga. App. 157, 161 (342 SE2d 468) (1986).

Elberta contends that summary judgment in its favor was appropriate because it did not have superior knowledge of Denmark's violent propensities, citing *Clark*, supra at 159. It is, however, undisputed that Elberta had superior knowledge to Crapp of the fact that Denmark would be returning to the premises. On this issue, the facts of this case are analogous to those of *Howell v. Three Rivers Security*, 216 Ga. App. 890 (456 SE2d 278) (1995). In *Howell*, a night club admitted an individual named Bennett whom it had earlier ejected for fighting and banned for life. Plaintiff, a patron in the bar who had been threatened by Bennett in the past, was injured by Bennett when the bar re-admitted Bennett, despite having banned him for life. Stating that "[t]he true ground of liability is the superior knowledge of the proprietor of the existence of a condition that may subject the invitee to an unreasonable risk of harm," *Howell* specifically held that the bar breached its duty to the plaintiff.[1] (Citation, punctuation and emphasis omitted.) Id. at 891, 892.

Applying the *Howell* analysis to the facts of the instant case, viewed most favorably for Crapp, Elberta breached its duty of ordinary care to Crapp when, with full knowledge of Denmark's propensity for violence toward Crapp, it specifically directed Denmark to return to the premises, when it failed to warn Crapp of such direc-

---

[1] Ultimately, the plaintiff in *Howell* was precluded from recovering, as he became aware that his attacker had been re-admitted to the bar, but chose to continue dancing near a security guard even after he saw his attacker approaching. In light of his decision to remain in a dangerous situation despite ample opportunity to leave, we held that at that point in time, just prior to the attack, the plaintiff had no serious argument that the bar "had superior knowledge of [his] peril under the circumstances." Id. at 892.

tion, when it permitted Denmark back on the premises, and when it failed to protect Crapp from Denmark's demonstrated violence upon his return to the premises at their direction. Elberta had superior knowledge to Crapp of the fact that Denmark would be returning to the premises and of the need for additional safeguards arising from such return.

Elberta argues that Denmark's shooting of Crapp was not foreseeable as a matter of law, because it was not similar to Denmark's prior assault on his former girl friend on Elberta's premises. However, "[a]ll that is required is that the prior incident be sufficient to attract the [proprietor's] attention to the dangerous condition which resulted in the litigated incident." (Citation and punctuation omitted.) *Matt v. Days Inns of America,* 212 Ga. App. 792, 794 (443 SE2d 290) (1994), aff'd, 265 Ga. 235 (454 SE2d 507) (1995). The prior incident need not be the same crime, and the means of inflicting injury need not be identical. Id. at 795. Accordingly, this argument is without merit.

Finally, Elberta argues that summary judgment was appropriate because this case is factually similar to *Clark v. Carla Gay Dress Co.,* supra. In *Clark,* the plaintiff informed her supervisor that her husband abused drugs and beat her. *Clark,* supra at 157. She was subsequently shot at her workplace by her estranged husband, and the grant of directed verdict for the proprietor was upheld. Id. In *Clark,* the estranged husband who shot his wife at work had neither worked for the defendant proprietor nor attacked his wife on the proprietor's property earlier the same day, as Denmark had. The proprietor also had not specifically directed the husband to come to the workplace or failed to warn the victim of such direction. In *Clark,* the proprietor did not have superior knowledge to that of the victim that the attacker would be returning to the premises. Also, unlike Elberta, the proprietor in *Clark* "did not have notice of the dangerous conduct on the part of the husband *on the occasion in question."* (Citation and punctuation omitted; emphasis in original.) Id. at 162. Elberta's reliance upon *Clark* is misplaced as it is factually distinguishable.

As there is evidence that Elberta could have foreseen the unreasonable risk of harm posed to Crapp by its directing and permitting Denmark's unsupervised return to the premises without her knowledge, and as the evidence shows a genuine issue of material fact exists for jury determination as to whether Elberta breached its duty of ordinary care to Crapp, the trial court erred in granting summary judgment to Elberta.

*Judgment reversed. Beasley, C. J., and Birdsong, P. J., concur.*

Decided November 25, 1996 —
Reconsideration denied December 11, 1996 —

*Del Percilla, Jr.*, for appellant.

*Kirbo & Kendrick, David A. Kendrick, Watson, Spence, Lowe & Chambless, Stephen S. Goss*, for appellee.