A97A2436. HOME INSURANCE COMPANY v. SUNRISE CARPET INDUSTRIES, INC.
(493 SE2d 641)

ELDRIDGE, Judge.

On April 19, 1990, plaintiff-appellant Home Insurance Company ("Home Indemnity")[1] issued to defendant-appellee Sunrise Carpet Industries, Inc. ("Sunrise"), a policy of workers' compensation insurance and employer's liability insurance for the policy period from March 26, 1990, to March 26, 1991. The policy covered employees of Sunrise who were employed at the plant located on Highway 411 North and at the office-warehouse located on Duvall Road. Sunrise had additional clerical employees, as well as a truck driver.

The information page of the insurance policy provided: *"The premiums for this policy will be determined by our manuals of rules, classifications, rates and rating plan. All information required below*

---

[1] Home Insurance Company acquired all the assets and liabilities of Home Indemnity Company by merger subsequent to the claim arising. To avoid confusion caused by the name of the insurer in the record, Home Indemnity will be used to identify the plaintiff-appellant.

*is subject to verification and change by audit."* (Emphasis in original.) The "information required below" consisted of four classifications of Sunrise employees, the rates for each classification, and estimated payroll[2] for each classification. The classifications were: (1) carpet or rug manufacturing;[3] (2) loose-leaf ledger or notebook manufacturing;[4] (3) store: wholesale;[5] and (4) clerical office employees.[6] The policy was issued on April 19, 1990, and contained Item 4, infra.

| Item 4 Classifications | Code No. | Est. Total Remun. ANNUAL | Rate per $100 of Remun. | Est. Premium ANNUAL |
|---|---|---|---|---|
| Carpet mfg. | 2402 | $1,155,000 | 8.18 | $94,479 |
| Loose-leaf mfg. | 4251 | $ 308,921 | 5.78 | $17,856 |
| Store, wholesale | 8018 | $ 223,650 | 4.46 | $ 9,975 |
| Clerical office | 8810 | $1,346,852 | .59 | $ 7,946 |

The initial total estimated annual premium was $182,074 after all discounts and factors were calculated. The policy obligated Home Indemnity to determine the proper classifications and actual exposure under the policy. Sunrise also agreed to pay all the premiums due as calculated by Home Indemnity, which it did during the policy period but disputed an excess premium imposed after the policy expiration. The policy provided that "[t]he final premium will be determined after this policy ends by using the actual, not the estimated, premium basis and the proper classifications and rates that lawfully apply to the business and work covered by this policy."

The Manual of Rules, Classifications, Rates & Rating Plans ("NCCI Manual"), incorporated into the policy by reference, was to group employees by classification to reflect the common risk exposure of such classification.[7] The standard exception classification for clerical office employees was code 8810 and the classification for truck drivers was code 7380.[8] Classification codes 4251 and 8018 are not standard exception classifications. The reallocation of payroll among classifications is not a change or correction in classification under the NCCI Manual.[9] NCCI Manual Rule IV (G) (2) conflicts with the policy provisions in that it does not allow a change in classification which will result in an increase in premiums except in section c, which reads "During the last 90 days of the coverage, corrections in classifications will not be effected except upon a renewal

---

[2] The estimated payroll is also known as the premium basis for each classification.
[3] Carpet or rug manufacturing, Noc. Code No. 2402.
[4] Loose-leaf ledger or notebook manufacturer, Noc. Code No. 4251.
[5] Store: wholesale, Noc. Code No. 8018.
[6] Clerical office employees, Noc. Code No. 8810.
[7] NCCI Manual Rule IV (A) and IV (B) (2).
[8] NCCI Manual Rule IV (B) (2).
[9] NCCI Manual Rule IV (G) (5).

policy, if any."

During a May 1990 audit Home Indemnity determined that classification codes 2402, 8810, and 7380 applied to Sunrise's operations but made no changes until February 28, 1991. Following the audit, Home Indemnity finally issued an endorsement to the policy dated February 19, 1991, less than two months prior to the expiration date of the policy which caused an increase in the premiums, which reads as follows:

| Class | Code No. | Est. Remun. Annual | Rate/Remun. | Est. Prem. Annual |
|---|---|---|---|---|
| Carpet mfg. | 2402 | $1,865,323 | 8.18 | $152,583 |
| Clerical | 8810 | $ 590,711 | .59 | $ 3,485 |
| Drivers | 7380 | $ 13,537 | 7.76 | $ 1,050 |

On February 28, 1991, Home Indemnity issued a new endorsement that reinstated the original April 19, 1990 classifications and payroll. On March 4, 1991, Home Indemnity issued an endorsement that replaced the February 28, 1991 endorsement and reinstated the classifications and payroll as they existed in the February 19, 1991 endorsement. At all times classification codes 2402 and 8810 were in the policy.

Sunrise was provided insurance coverage for the policy period, which expired on March 26, 1991. Nearly two months after the policy expiration date, Home Indemnity conducted yet another audit of the expired policy period. Home Indemnity determined that the estimated payroll (premium basis) for each classification had been incorrectly applied by it; it reallocated the payroll among classification codes 2402, 7380, and 8810; and it alleged that Sunrise owed an additional premium of $95,882 for the expired policy period. On May 28, 1991, Home Indemnity billed Sunrise for the excess premium. Home Indemnity then determined that Sunrise had made excess payments for the earlier policy period March 26, 1989 to March 26, 1990, and applied such excess payments to the current claimed excess premium due for the policy period March 26, 1990 to March 26, 1991, to reduce the alleged excess premium to $68,857. Sunrise made an immediate protest that Home Indemnity had misapplied the classifications to obtain the premium excess and refused to pay.

Home Indemnity hired an expert, Jack Morris, to review the matter. Morris' opinion was that Home Indemnity had correctly calculated the excess premium in its May 28, 1991 audit, but he expressed no opinion as to the many other prior errors and miscalculations Home Indemnity made requiring the post-coverage calculation. He agreed that, in his opinion, Home Indemnity correctly applied the NCCI manual to the terms of the policy. Morris based his opinion upon the prior audit opinion of Robert E. Pomeroy, the NCCI

classification inspection report, and the audit opinion of Robert B. Sellers.

Home Indemnity sued Sunrise on November 28, 1994, for failure to pay the disputed excess premium. Sunrise answered timely. Home Indemnity moved for summary judgment, and Sunrise filed its cross-motion for summary judgment. On June 17, 1997, the trial court filed its order which granted Sunrise's motion for summary judgment and denied Home Indemnity's motion for summary judgment. Home Indemnity timely filed its notice of appeal.

1. The first enumeration of error is that the trial court erred in granting Sunrise's cross-motion for summary judgment. We do not agree.

NCCI Manual Rule IV (G) is in direct conflict with the policy provision allowing an audit at the end of the policy period to determine the classifications and allocations of the payroll to increase the premiums. "[Two] well known rules used in the construction of insurance contracts apply. Any ambiguities in the contract are strictly construed against the insurer as drafter of the document, *Hulsey v. Interstate Life &c. Co.*, 207 Ga. 167 (60 SE2d 353) (1950); . . . and insurance contracts are to be read in accordance with the reasonable expectations of the insured where possible, *Cincinnati Ins. Co. v. Davis*, 153 Ga. App. 291 (265 SE2d 102) (1980)." *Richards v. Hanover Ins. Co.*, 250 Ga. 613, 615 (299 SE2d 561) (1983); *Lieber Foods v. Nat. Investors Life Ins. Co.*, 143 Ga. App. 517 (239 SE2d 202) (1977). Ambiguity in an insurance contract is duplicity, indistinctiveness, or uncertainty of meaning or expression. *Alley v. Great American Ins. Co.*, 160 Ga. App. 597 (287 SE2d 613) (1981). When two provisions of an insurance contract conflict or are repugnant to each other, the provision most favorable to the insured shall apply. *U. S. Fire Ins. Co. v. Hilde*, 172 Ga. App. 161 (322 SE2d 285) (1984); see also *Cotton States Mut. Ins. Co. v. Crosby*, 149 Ga. App. 450 (254 SE2d 485) (1979), rev'd on other grounds, 244 Ga. 456 (260 SE2d 860) (1979); *McLendon v. Carolina Life Ins. Co.*, 71 Ga. App. 557 (31 SE2d 429) (1944). When the premium and method of premium calculation are ambiguous or contradictory, the method of calculation most favorable to the insured shall be applied. *Davis v. United American Life Ins. Co.*, 215 Ga. 521 (111 SE2d 488) (1959).

"Although no Georgia cases have addressed an insurer's duty to deal with the insured [with regard to retrospective premiums] in good faith, several other jurisdictions have imposed such a duty on the insurer. [Cits.] We are persuaded by the reasoning of these cases that because of the potential for conflict of interest, in dealing with retrospective premium policies, a duty is imposed upon the insurer to act reasonably and in good faith." *Benton Express v. Royal Ins. Co. of America*, 217 Ga. App. 331, 332-333 (1) (457 SE2d 566) (1995). While

this policy is not a retrospective premium policy, it has retroactive premium calculation provisions so that the same duties apply to the insurer, because the insurer has the power to change significantly the premiums due after the expiration of the policy. The insured provided with an estimated premium expects that if all factors remain the same that the final premium will fall within a reasonable range of such estimate; the insured relies upon the expertise of the insurer to provide a fair estimate and not to radically change the basis for such calculation. The insurer has the duty initially, throughout the coverage period, and finally on audit to make reasonable calculations, i.e., just trust me. Thus, the same duties of reasonableness and good faith apply.

Home Indemnity performed its first audit in May and June 1990 and determined that it needed to change the classifications of Sunrise's work force in a fashion that would increase its premiums. Home Indemnity failed to timely advise Sunrise of this even though NCCI Manual Rule IV (G) makes the effective date of such increase the time when the insurer makes such determination. Instead, Home Indemnity waited until February 16, 1991, to give Sunrise notice through the change of endorsement. However, NCCI Manual Rule IV (G) (2) c. prohibited any such change in classification during the last 90 days of the policy, which expired on March 26, 1991, and therefore the February 19; 1991 endorsement and the subsequent endorsements on February 28 and March 4, changing the classifications and increasing the premium, were void under the provisions of NCCI Manual Rule IV (G) (2) c. Therefore, the post-expiration policy audit could not change the classifications to increase the premium, but could leave the classifications and premium the same or change the classifications and decrease the premium. See NCCI Manual Rule IV (G) (2). The trial court correctly granted Sunrise's cross-motion for summary judgment.

2. The second enumeration of error is that the trial court erred in denying Home Indemnity's motion for summary judgment. We do not agree for the reasons set forth in Division 1.

Furthermore, the trial court correctly denied Home Indemnity's motion for summary judgment because there is a jury question as to the weight and credibility of movant's expert's opinion, which was based upon the opinions of others as to the proper classifications, as well as other audit and accounting issues that are matters of opinion and interpretation contained in business records and the expert opinion of such employees. Summary judgment may not be based only upon opinion evidence, expert or lay opinion with a proper predicate, because such opinion evidence requires a factual determination by a jury whether to accept it in whole or in part and what weight and credibility to give the opinion. See *Howard v. Walker*, 242 Ga. 406,

407 (249 SE2d 45) (1978); *Ginn v. Morgan*, 225 Ga. 192, hn. 2 (167 SE2d 393) (1969); *Standex Intl. Corp. v. Driver*, 223 Ga. App. 645, 646 (478 SE2d 605) (1996); *Cameron v. Moore*, 199 Ga. App. 800, 802 (406 SE2d 133) (1991); *Ga. Power Co. v. Sinclair*, 122 Ga. App. 305, 308 (2) (176 SE2d 639) (1970); *Dowis v. McCurdy*, 109 Ga. App. 488, 490 (2) (136 SE2d 389) (1964).

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED NOVEMBER 6, 1997.

*Wimberly & Lawson, James L. Hughes*, for appellant.
*Hine & Niedrach, Edward Hine, Jr., Eli J. Richardson*, for appellee.