A99A1586. FPI ATLANTA, L.P. et al. v. SEATON et al.
(524 SE2d 524)

ELDRIDGE, Judge.

FPI Atlanta, L.P., formerly known as FPI Atlanta, Ltd., owned and operated Timber Trace Apartments, Stone Mountain, DeKalb County, Georgia. Fogelman Management Company is a Tennessee corporation that managed Timber Trace for the limited partnership. Fogelman Properties, Inc., a Tennessee corporation, and Avron B. Fogelman were general partners in the limited partnership. Collectively, they are referred to as the Fogelman defendants.

Myron Seaton was a tenant at Timber Trace and lived there with his roommate Demeshia Seals. The apartment complex had 989 apartment units. The apartment complex did not have fences, gates, or controlled access. As early as 1988, the Fogelman defendants recognized the need for security at Timber Trace and used off-duty DeKalb police personnel to provide security for the tenants for approximately two years. Since 1992, the Fogelman defendants recognized the need for security gates. The manager of Timber Trace requested the installation of controlled access gates. The manager also suggested fencing prior to the incident in this case, but it was not installed. As of May 11, 1994, the Fogelman defendants had entered into a contract with Security Gates, Inc., to install electronic gates, which were not installed until after the incident.

However, in 1994, Timber Trace had an unarmed security patrol from 10:00 p.m. until 6:00 a.m. seven days per week. By contract, the

---

[14] *Rachals v. State*, 184 Ga. App. 420, 421 (1) (361 SE2d 671) (1987); *Wilson v. Bonner*, 166 Ga. App. 9, 17 (5) (303 SE2d 134) (1983).

[15] *Cannady*, supra.

security patrol was only to look for loiterers who might be casing the place or looking for victims of opportunity, for potential and apparent security problems, and for disturbances. After investigating any potential criminal activity that was a threat to the tenants, the tenants' property, or the landlord's property and after ensuring that the clubhouse, pool, and weight room were locked, the security patrol was to call the police, if there were any disturbances or occurrences. Such patrol was to periodically visit the property, making a visual survey of the premises and to be seen.

Tony Talevski d/b/a Corporate Security Services, a division of First Security Protective Services, Inc., provided security for the Fogelman defendants at Timber Trace. Corporate Security Services was an independent contractor with the Fogelman defendants. The contract provided that,

> CSS (Corporate Security Services) acknowledges its responsibility, by law, for the acts and omissions of its employees and agents in the carrying out of the duties imposed upon CSS herein, accept [sic] that CSS shall not be liable to Client or any other parties for loss or damage to property of Client or other parties which Client has placed in the immediate care, custody, and control of an employee or agent of CSS.

On the night of July 24, 1994, James Boone was the Corporate Security Services employee patrolling Timber Trace Apartments. Co-conspirators Marvin Earl Turner, Jr., Martin A. Boyer, and Marcus D. Crowder, drove to Timber Trace, looking for Myron Seaton, who was the Assistant Manager at a Picadilly Restaurant on Memorial Drive. However, Seaton had not returned from work. At approximately 10:00 p.m., Boone, one of the two men on the patrol, while making his security check of the premises, observed these men drive into the complex but did not investigate, because he saw nothing suspicious, in his opinion. About 30 minutes later, he saw the empty car and assumed that they must be visiting a resident. The car was parked with the rear to the curb, concealing the license tag from the patrol, and was positioned for a fast getaway. When the police arrived, immediately after the incident, Boone stated to the police in the presence of Seals that he had been distracted when he saw the men and wished that he had followed them.

At approximately 9:30 p.m., an unknown male called Seals and determined from her that Seaton was not at home. At 10:00 p.m., two men knocked on Seaton's apartment door. Seals looked out the window and saw two unknown men with a television set. They told her that "Myron" had sent them with the television and to let them leave it inside. Seals opened the door, and the men entered, put down the

television, and pulled guns. Seals' hands and feet were tied; she was threatened with a gun and forced into a bedroom closet.

At about 10:30 p.m., when Seaton returned to the apartment, he had a shotgun put to his head and was taken back to Picadilly Restaurant by force. At the restaurant, he was forced to open the safe, and the men took approximately $10,000.

Seaton and Seals sued the Fogelman defendants, Talevski, and Boone. All of the defendants and the plaintiffs moved for summary judgment. The trial court denied the Fogelman defendants' motion as to negligence, but granted it as to nuisance, found that a jury issue existed as to assumption of risk by Seals, denied the defense of release as to Seaton, and denied the motion as to punitive damages. The trial court granted Talevski's and Boone's motions for summary judgment. The trial court denied plaintiffs' motion for summary judgment.

1. The Fogelman defendants contend that the trial court erred in finding that they negligently breached a legal duty owed to the plaintiffs. We do not agree.

(a) The landlord's liability for third-party criminal conduct arises under OCGA § 51-3-1 from the duty to exercise reasonable care to keep the premises and approaches safe when such criminal act with risk of injury can be reasonably foreseen by the landlord from prior substantially similar criminal conduct of the same type. The duty to guard against injury from dangerous characters arises when "the [landlord] has reason to anticipate a criminal act," from prior experience with substantially similar types of crimes. *Lau's Corp. v. Haskins*, 261 Ga. 491, 492 (1) (405 SE2d 474) (1991). See also *Days Inns of America v. Matt*, 265 Ga. 235, 236 (454 SE2d 507) (1995).

Accordingly, the incident causing the injury must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her . . . tenants against the risk posed by that type of activity. In determining whether previous criminal acts are substantially similar to the occurrence causing harm, thereby establishing the foreseeability of risk, the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question. While the prior criminal activity must be substantially similar to the particular crime in question, that does not mean identical. What is required is that the prior incident be sufficient to attract the landlord's attention to the dangerous condition which resulted in the litigated incident. Further, the question of reasonable foreseeability

of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts.

(Citations and punctuation omitted.) *Sturbridge Partners, Ltd. v. Walker*, 267 Ga. 785, 786 (482 SE2d 339) (1997). See also *Doe v. Briargate Apts.*, 227 Ga. App. 408, 409-410 (1) (489 SE2d 170) (1997).

The record shows that the Fogelman defendants had knowledge that, between May 23, 1989, and July 24, 1994, fifty-nine burglaries, five armed robberies, one robbery, one kidnapping, two murders, two pointing of a pistol at another/aggravated assaults, two persons shot/ aggravated assaults, one simple battery, and one criminal trespass had been committed in the complex. Such knowledge raised a factual question as to the reasonable foreseeability of plaintiffs being victims of burglary, armed robbery, aggravated assault, and kidnapping in their apartment. *Sturbridge Partners, Ltd. v. Walker*, supra at 786; cf. *Doe v. Prudential-Bache/A.G. Spanos &c.*, 268 Ga. 604, 606 (492 SE2d 865) (1997).

The prior similar occurrences do not require that, in the past, someone else was kidnapped for the purpose of forcing the opening of a safe or store. "All that is required is that the prior incident be sufficient to attract the [landlord's] attention to the dangerous condition which resulted in the litigated incident." (Citation and punctuation omitted.) *Matt v. Days Inns of America*, 212 Ga. App. 792, 794 (443 SE2d 290) (1994), aff'd, 265 Ga. 235, supra. The type of violent crimes must be such that a reasonable person should reasonably foresee the risk of crime occurring to the tenants in their apartment. See *Sturbridge Partners, Ltd. v. Walker*, supra at 786; see also *Crapp v. Elberta Crate &c. Co.*, 223 Ga. App. 902, 905 (479 SE2d 101) (1996). Clearly, 59 burglaries, not even considering the murders, aggravated assaults, robberies, and armed robberies, indicated that there was a substantial likelihood that someone would enter an occupied apartment to commit a felony and that the felony would be violent. See *Sturbridge Partners, Ltd. v. Walker*, supra at 787.

(b) The Fogelman defendants contend that hiring Corporate Security Services satisfied its duty of ordinary care owed to its tenants. However, under the contract terms, Corporate Security Services was liable to neither the Fogelman defendants nor any other parties for any property loss or damage. Further, Corporate Security Services was only to show its presence, check to see that the Fogelman defendants' premises were locked, and to report anything to the police that looked suspicious. Under the circumstances of this case, whether or not this was an exercise of ordinary care created a jury question. *Lau's Corp. v. Haskins*, supra at 493-494 (2).

Such contract for an active security patrol presence, without investigation and intervention, afforded no security that required

intervention as evidenced by the fact that the three armed robbers and kidnappers proceeded with their criminal conspiracy, although they knew that they had been observed by Corporate Security Services. It can be reasonably inferred that the felons believed Corporate Security Services to have posed no threat, because they proceeded to complete such conspiracy unhindered by the security patrol. In a known high crime area, i.e., the apartment complex, between 10:00 and 10:30 p.m., Boone observed these three males driving around the apartment complex and parking with the rear of the vehicle to the curb for a fast getaway and to conceal the license tag from the security patrol. Such suspicious conduct required direct investigation; however, since Corporate Security Systems personnel were unarmed, then such direct action would put them at risk, and they chose neither to act, to actively investigate, to passively observe, or to report to the police.

Plaintiffs' expert witness' opinion was that the Fogelman defendants failed to exercise ordinary care when third-party criminal conduct was reasonably foreseeable, thereby creating a jury issue, so that the trial court did not err in denying their motion for summary judgment.

2. The Fogelman defendants contend that the trial court erred in holding that there was a genuine issue of fact as to causation between a breach of duty and the damages.

Inherent in every case of liability for third-party criminal conduct is the existence of concurrent proximate cause of the landlord's prior negligent act or omission. *Sutter v. Hutchings*, 254 Ga. 194, 197 (1) (327 SE2d 716) (1985); *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982); *Atlantic Coast Line R. Co. v. Godard*, 211 Ga. 373, 376-377 (1) (86 SE2d 311) (1955); *Williams v. Grier*, 196 Ga. 327, 336-338 (2) (26 SE2d 698) (1943); *Bozeman v. Blue's Truck Line*, 62 Ga. App. 7, 9-11 (7 SE2d 412) (1940). Generally, the independent, intervening criminal act of a third party, which directly caused the injury, will be treated as the supervening proximate cause of such injury, breaking the causal connection between the defendants' negligence and the injury, unless such intervening criminal act was a reasonably foreseeable consequence of defendants' negligent act or omission. *Brown v. Mobley*, 227 Ga. App. 140, 142 (488 SE2d 710) (1997) (physical precedent only); *Crapp v. Elberta Crate &c. Co.*, supra at 904-905; *Wright v. Ashe*, 220 Ga. App. 91, 94-95 (469 SE2d 268) (1996); *Simmons v. Dept. of Human Resources*, 213 Ga. App. 98 (1) (443 SE2d 654) (1994); *Tolbert v. Tanner*, 180 Ga. App. 441, 444-445 (2) (b) (349 SE2d 463) (1986).

Division 1 controls the issue of reasonable foreseeability of the substantially similar type of criminal conduct by the landlord.

3. The Fogelman defendants contend that the trial court erred in

not finding that Seals' claim was barred by an assumption of the risk. We do not agree.

> In Georgia, . . . defendant[s] asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed [herself] to those risks. Knowledge . . . means both *actual* and *subjective* knowledge on the plaintiff's part. The knowledge that a plaintiff who assumes a risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury. The knowledge requirement does not refer to a plaintiff's comprehension of general, non-specific risks that might be associated with such conditions or activities. . . . In its simplest and primary sense, assumption of the risk means that the plaintiff, in advance, has given [her] consent to relieve the defendant[s] of an obligation of conduct toward [her], and to take [her] chances of injury from *a known risk arising from what the defendant[s are] to do or leave undone.*

(Citations, punctuation and footnotes omitted; emphasis in original.) *Vaughn v. Pleasent*, 266 Ga. 862, 864 (471 SE2d 866) (1996). See also generally *Robinson v. Kroger Co.*, 268 Ga. 735, 740-743 (1) (493 SE2d 403) (1997).

Under the facts of this case, Seals was intentionally misled by a trick of the felons which caused her to open the door. She was told that "Myron," her roommate, sent them; that they had a television set to deliver for "Myron" on his instruction; and that because it was heavy, they needed to put the television set down in the apartment, while she tried to find out about it and she saw that they did have a television. Thus, she lacked subjective knowledge of the risk of danger and had only a general awareness of a potential risk. *Borders v. Bd. of Trustees, V.F.W. Club 2875*, 231 Ga. App. 880, 882 (1) (b) (500 SE2d 362) (1998). The trial court did not err in denying the Fogelman defendants' motion for summary judgment based upon an assumption of the risk, because a jury issue existed.

4. The Fogelman defendants contend that the trial court erred in denying their motion for partial summary judgment as to punitive damages. We do not agree.

OCGA § 51-12-5.1 (b) provides that punitive damages "may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed . . . that entire want of care which would raise the presumption of conscious

indifference to consequences."

In Divisions 1 and 2, reasonable foreseeability and concurrent proximate causation were held to be matters for the jury. Prior to January 1990, the Fogelman defendants had off-duty DeKalb County Police Department officers provide security. In January 1990, the Fogelman defendants decided to have only security patrols that merely exhibited a physical presence but took no active security measures to protect tenants, even though there was a high rate of violent crimes against persons and burglaries. In early 1992, the Fogelman defendants contracted for Corporate Security Services to drive through the apartment complex several times each night, check the landlord's locks, and report crimes or suspicious conduct; such was not tenant security. Under the facts and circumstances of this case, the failure to provide a real "security patrol" for the apartment complex and to have a fenced and gated access gives rise to a jury issue as to an entire want of care, which gives rise to a presumption of a conscious indifference to the consequences for tenants. See *Carlock v. Kmart Corp.*, 227 Ga. App. 356, 358-360 (2) (489 SE2d 99) (1997); see also *Doe v. Briargate Apts.*, supra at 411 (2); *Read v. Benedict*, 200 Ga. App. 4, 7 (2) (406 SE2d 488) (1991); see generally *Colonial Pipeline Co. v. Brown*, 258 Ga. 115, 121-122 (4) (365 SE2d 827) (1988).

5. The Fogelman defendants contend that the trial court erred in granting summary judgment to Talevski d/b/a Corporate Security Services and James Boone. We agree.

(a) Under OCGA § 51-2-5 (4), the employer of an independent contractor is liable for the acts and omissions of such independent contractor when the duty is imposed by statute; in this case, OCGA § 51-3-1 imposes a personal and nondelegable duty upon the landlord to keep the premises and approaches safe when it retains possession and control. *Feggans v. Kroger Co.*, 223 Ga. App. 47 (476 SE2d 822) (1996); *Hickman v. Allen*, 217 Ga. App. 701, 702-703 (458 SE2d 883) (1995); *Moon v. Homeowners Assn. of Sibley Forest*, 202 Ga. App. 821, 824 (4) (415 SE2d 654) (1992); *Towles v. Cox*, 181 Ga. App. 194, 196-197 (1) (351 SE2d 718) (1986).

Further, a personal and nondelegable duty imposed by statute cannot be avoided by a management company employing a security company to protect only the owner's property; the owner is liable for the torts of an independent contractor in protecting its premises. OCGA § 51-3-1; *Peachtree-Cain Co. v. McBee*, 254 Ga. 91, 94 (2) (327 SE2d 188) (1985). *U. S. Shoe Corp. v. Jones*, 149 Ga. App. 595, 596 (1) (255 SE2d 73) (1979), is distinguishable from this case, because it was based not upon negligence, but upon an intentional tort committed upon the owner's premises in protecting merchandise. This action, however, is based in negligence; therefore, the dicta from foreign case law regarding negligence of an independent contractor, i.e.,

the security guard, have no application to this case. Similarly, *Ellenberg v. Pinkerton's, Inc.*, 125 Ga. App. 648, 651 (188 SE2d 911) (1972), is distinguishable from the facts and law of this case, because it was an intentional act, i.e., tortious invasion of privacy by an independent contractor. However, more importantly, the tortious act of the independent contractor did not occur on the owner's premises, so that there was no statutory duty under OCGA § 51-3-1 owed to the plaintiff. OCGA § 51-2-5 (4). Relying upon the foreign dicta in *U. S. Shoe Corp. v. Jones*, supra at 596, this Court repeated such dicta again as dicta in *Reid v. Augusta-Richmond County Coliseum Auth.*, 203 Ga. App. 235, 237 (416 SE2d 776) (1992), because, although based upon a theory of negligence, the injury occurred off the premises and approaches of the owner, and the alleged negligence was committed not by the private security who were hired only to secure the entrances and exits and had notice, but by the off-duty Augusta Police Department officers hired to handle outside security, who had no notice of the potential criminal act. Thus, the dicta were not necessary to the holding of the case. None of such cases even considered that a statutorily imposed duty cannot be delegated to an independent contractor to escape vicarious liability under OCGA § 51-3-1. See OCGA § 51-2-5 (4); *Feggans v. Kroger Co.*, supra; *Moon v. Homeowners Assn.*, supra; *Hickman v. Allen*, supra; *Towles v. Cox*, supra. Therefore, the Fogelman defendants have vicarious liability for any negligent act or omission of its independent contractor/security guard, separate from its own liability under OCGA § 51-3-1.

(b) Under the contract, Corporate Security Services expressly excluded liability to either the Fogelman defendants or "any other parties" for damage or loss of property, but did not expressly exclude liability for personal injury to the owners, management, or "any other parties." Thus, the express language of the contract clearly indicated that the signatories to the contract intended that there be third-party beneficiaries to the contract, i.e., "any other parties." OCGA § 9-2-20 (b). For there to arise contractual duties to perform owed to a third party, it must appear from the contract that it was intended for the benefit of the third party by the contracting parties. *Somers v. Avant*, 244 Ga. 460, 463 (261 SE2d 334) (1979); *Muldawer v. Stribling*, 243 Ga. 673, 676 (256 SE2d 357) (1979); *Stewart v. Gainesville Glass Co.*, 131 Ga. App. 747, 752-753 (206 SE2d 857) (1974), aff'd, 233 Ga. 578 (212 SE2d 377) (1975). In this case, the contract clearly indicates that parties not expressly named in the contract are to be affected by the contract as third-party beneficaries.

Where a contract is ambiguous on its face, the court as a matter of law must use the rules of construction to construe the contract to give effect to it. OCGA § 13-2-1. Under the contract, it is unclear to whom the phrase "any other parties" refers and what duties were

owed to such "other parties" by Corporate Security Services. Under the attendant and surrounding circumstances, the owner and managers had a nondelegable personal duty to the tenants under OCGA § 51-3-1. See *Lau's Corp. v. Haskins,* supra at 493-494 (2). Since the manager, as general partner, is a signatory of the contract and is in privity as one of the owners, i.e., the limited partnership, and since damage or loss of property of the owners is excluded, then the "any other parties" is not the limited partnership or the manager, because the contract otherwise covers them. OCGA § 13-2-2 (1). "Any other parties" should be given its usual and common meaning in this situation: someone to whom the landlord owed a duty under OCGA § 51-3-1, who had a possessory right to be on the premises and were on the premises, and whose property would be on the premises, i.e., the tenants. OCGA § 13-2-2 (2). Further, the contract should be construed against the drafter and party undertaking the obligation, Corporate Security Services. OCGA § 13-2-2 (5). Since the contract expressly excluded and limited liability only as to property, but did not expressly exclude or limit liability for personal injury, then Corporate Security Services under the written contract may be liable to the tenants for personal injury in conducting its security survey and patrol and in negligently failing to report suspicious conduct to the police.

(c) A fact question exists as to whether the conduct of the three felons was such as to arouse the suspicions of a reasonably prudent security person to investigate or to report the conduct to the police. While Boone stated his opinion that the conduct did not appear suspicious to him, in an ordinary negligence case, opinion evidence alone is insufficient to grant summary judgment, because the weight and credibility of opinion evidence are for the jury to determine. *Harrison v. Tuggle,* 225 Ga. 211, 213 (2) (167 SE2d 395) (1969); *Ginn v. Morgan,* 225 Ga. 192, hns. 2, 3 (167 SE2d 393) (1969); *Galloway v. Banks County,* 139 Ga. App. 649, 651 (229 SE2d 127) (1976); see also *Home Ins. Co. v. Sunrise Carpet Indus.,* 229 Ga. App. 268, 272-273 (2) (493 SE2d 641) (1997); *Walker v. MARTA,* 226 Ga. App. 793, 797 (1) (487 SE2d 498) (1997); *Johnson v. Autozone,* 219 Ga. App. 390, 393 (465 SE2d 463) (1995). Further, Boone made certain admissions against interest which create a jury question as to his exercise of ordinary care.

(d) *Armor Elevator Co. v. Hinton,* 213 Ga. App. 27, 30 (2) (443 SE2d 670) (1994), does not control under the facts of this case, because the contract in this case expressly stated "any other parties," so that the tenants were the express third-party beneficiaries of the contract, while in *Armor Elevator Co.* invitees were not third-party beneficiaries. Further, in that case, PSI Security had no general duty to inspect and to warn others of the condition of the premises, while

in this case, inspection and prevention were Corporate Security Services' primary duties. In *Armor Elevator Co.*, PSI's primary responsibility as building security was to provide lobby security and limit access to unauthorized persons. In this case, Corporate Security Services was to patrol and to report to the police suspicious conduct or crimes. Here, Corporate Security Services' duty was to prevent crime by its presence and by reporting suspicious conduct before a crime occurred. Unlike PSI, Corporate Security Services had an active duty that involved crime prevention for the benefit of the tenants.

*Judgment affirmed in part and reversed and remanded in part. Pope, P. J., concurs and concurs specially in Division 5. Smith, J., concurs in the judgment only.*

POPE, Presiding Judge, concurring specially.

I agree with the majority that there is an issue of fact regarding duty, breach, proximate cause, and punitive damages for the owner/operators. See *Doe v. Briargate Apts.*, 227 Ga. App. 408 (489 SE2d 170) (1997) (physical precedent). I specially concur with regard to Division 5, because the tenants were not third-party beneficiaries of the security contract.

First, there is no inconsistency in holding that the owner/operators may be liable even though the security defendants are not, as the trial court ruled. The owner/operators had a nondelegable duty to the tenants. OCGA §§ 51-2-5 (4); 51-3-1; *Moon v. Homeowners' Assn. of Sibley Forest*, 202 Ga. App. 821, 824 (4) (415 SE2d 654) (1992). Seaton and Seals have alleged in part that the owner/operators failed to provide a sufficient amount of security given the past history of crime at the complex. See *Briargate Apts.*, 227 Ga. App. at 410 (1). Under certain circumstances an independent contractor, such as the security defendants here, may not be liable for defective design of the work. See generally *David Allen Co. v. Benton*, 260 Ga. 557, 558 (398 SE2d 191) (1990).

The second question is whether the security company may be liable in addition to the owner/operators. The trial court held that the company owed no duty to the tenants. The majority reverses that decision based on a negative inference drawn from the wording of the contract. The majority reasons that because the security contract expressly provided that the security defendants did not have any liability to the owner/operators or "any other parties" for property damage, that the security defendants impliedly agreed they would be liable to "any other parties" in tort.

"In order for a third party to have standing to enforce a contract . . . it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient." (Citations and punctuation

omitted.) *Miree v. United States*, 242 Ga. 126, 135 (3) (249 SE2d 573) (1978); OCGA § 9-2-20 (b). In *Miree*, the plaintiffs claimed third-party beneficiary status based on language in a contract between DeKalb County and the Federal Aviation Administration that stated the contract was " 'for the use and benefit of the public.' " Id. at 127. The Supreme Court found this language did not clearly show an intention by the parties to permit the general public to sue on the contract. Id. at 135-136. See also *Page v. City of Conyers*, 231 Ga. App. 264, 265-267 (1) (499 SE2d 126) (1998).

Here, in addition to the provision relied on by the majority, the security contract includes a merger clause which states, "this writing constitutes the sole agreement between the parties, and any representation, warranty or promise not included herein shall be of no effect."

It is unreasonable to say that an intent "clearly appears from a contract" when a negative inference is required to show it, especially where there is a merger clause in the agreement. Further, there are over 2,500 tenants at the apartment complex. It is certainly not clear from the contract that by hiring one or two security guards to patrol at night that the owner/operators and the security defendants intended to give all 2,500 tenants the right to sue under the contract. See *Armor Elevator Co. v. Hinton*, 213 Ga. App. 27, 30 (2) (443 SE2d 670) (1994) (building patrons not beneficiaries of contract between security company and building owners); *Culberson v. Fulton-DeKalb Hosp. Auth.*, 201 Ga. App. 347, 349 (1) (d) (411 SE2d 75) (1991), rev'd on other grounds, *Lemonds v. Walton County Hosp. Auth.*, 212 Ga. App. 369 (441 SE2d 821) (1994) (patient and family were not beneficiaries of contract whereby hospital authority agreed to maintain medical facility for the indigent); compare *Kirby v. Chester*, 174 Ga. App. 881, 884-886 (331 SE2d 915) (1985) (lender was third-party beneficiary of contract between attorney and borrower whereby attorney certified borrower's title to land which was to secure the loan). The trial court correctly held that the tenants were not third-party beneficiaries of the security agreement even though they may have benefited from it.

However, the security defendants may be liable if they voluntarily undertook to provide security for the tenants. If so, they are liable if they were negligent and either (1) Seaton and Seals detrimentally relied on the security defendants' actions or (2) the security defendants created an increased risk of harm by their own actions. *Griffin v. AAA Auto Club South*, 221 Ga. App. 1, 3 (2) (470 SE2d 474) (1996); *Adler's Package Shop v. Parker*, 190 Ga. App. 68, 71-72 (1) (b) (378 SE2d 323) (1989).

An expert for the plaintiffs testified that the security services that were provided would reasonably lead a tenant to the conclusion

that security was being provided for them and that the premises were safe. Seals thought the security was for the tenants. Boone, the security guard on duty on the night in question, explained that he would watch over people in addition to the apartment complex property. The expert also testified that Boone's failure to contact the police after seeing the suspicious vehicle fell below the standard of care in the industry. Thus, there is an issue of fact concerning whether the security company negligently undertook to protect the tenants, and for this reason I specially concur with regard to Division 5.

DECIDED NOVEMBER 3, 1999 —
RECONSIDERATION DENIED NOVEMBER 18, 1999 — 

*Shapiro, Fussell, Wedge, Smotherman & Martin, Robert B. Wedge, Mary L. Hahn,* for appellants.
*Hammond, Carter & Watson, A. Cullen Hammond, Bauer & Deitch, Gilbert H. Deitch,* for appellees.