## A99A1652. HALL et al. v. HARRIS et al.
(521 SE2d 638)

ELDRIDGE, Judge.

In early June 1989, Joe Richard Harris, defendant-appellee, was the sole owner, officer, and manager of Harris Builders, Inc. and Multi-Pest Services, Inc., defendants-appellees, and acted as developer-builder/general contractor of a house at 80 Hidden Lakes Drive in Carrollton, Carroll County. Harris determined the design, materi-

als, and construction methods for such house, selected all subcontractors, inspected all work, and accepted all subcontractor work. He had the exterior of the house covered with synthetic stucco, known as "EIFS." Harris also had his company, Multi-Pest Services, Inc., do the termite barrier treatment of the house.

Murphy, plaintiffs' expert witness, testified that, in his expert opinion, the defendants had been negligent in the choice of materials and design, in construction and workmanship, and in inspection and acceptance of the work of subcontractors; that the defendants breached warranties; and that the defendants breached the contract provision that rotten wood in doors and windows would be replaced. He based such opinions upon a detailed inspection that he put into a report, which set forth the factual bases of his specific factual findings. The EIFS cladding was intended by the manufacturer for commercial and industrial applications and not residential structures, because residential structures have more doors and windows through which moisture can get behind the artificial stucco. The defendants chose to use EIFS although the house had 34 windows, 14 doors, and many penetration points through the cladding for utilities and fixtures, which increased the risk of moisture penetration behind the EIFS unless properly sealed. Murphy found, in fact, that moisture had penetrated at such points so that the door and window frames had rotted. Harris had knowledge and expertise in the area of stucco installation and application sufficient to allow him to detect defects by merely observing the work, so that he was aware of these defects or should have been.

At the time of construction, EIFS and other synthetic stucco products were generally known in the industry to retain or trap moisture so that wood beneath the EIFS would rot; that the trapped moisture would encourage termite infestation; and that extending the EIFS to and below ground level would provide concealed termite access. Such information was provided by the manufacturer as part of its specifications and installation instructions. Harris was aware of the special precautions that were mandated by the manufacturer when using EIFS, i.e., adequate prime coating, flashing, backer rods, sealant, and caulking. These precautions should be taken where the synthetic stucco abutted wooden doors, windows, decorative columns, frieze, fascia board, roof side wall junctures, and roof lines making seams; moisture barriers were essential at such potential access areas to keep rainwater from seeping behind the EIFS.

In this case, the EIFS was negligently extended to and below ground by the installer, contrary to the manufacturer's installation directions and specifications for use of the product. Such improper installation was observable by the defendants during and after final installation, inspection, approval, and acceptance of the work. The

defendants did not follow or require its installers to follow such general construction standards, precautions, and manufacturer's specifications in either their contract with subcontractors, their acceptance of work from the installer, or their own or other subcontractors' work. The defendants inspected and accepted such negligently and defectively performed work. Further, flat decorative surfaces at windows, doors, columns, and other areas provided water collection points and moisture entry areas, which were prepared and installed or inspected and accepted by the defendants. Where EIFS cladding was penetrated for deck attachments, electric meters, light fixtures, hose bibs, or similar utility openings, there were no proper back wraps, improper back wraps, base coats, backer rods, or sealants to prevent moisture penetration. All of such negligent installation procedures and defective conditions were readily observable by an expert like Harris, during and after the EIFS installation, or were the results of the acts or omissions of the defendants directly. Harris in the exercise of ordinary care, while carrying out contract compliance inspection and acceptance of the subcontractor's work, should have discovered such defects and deviations from the workmanship standard of care. With time, damage from termites and wood rot directly resulted from such negligent acts, omissions, and defective workmanship.

The house was constructed by the defendants with other defects in design, workmanship, and material; the failure to waterproof the foundation walls was below the reasonable standard of care used by a reasonable homebuilder. The floor joists span of 11'8″, with the 2″ x 10″ joists notched to 2″ x 6″ at each end, reduced the joist load capacity to the equivalent of a only 2″ x 6″ with a span of 9'8″. Concentric loading of piers for the floor joists was at a single pier located under the kitchen. The roof had no felt or other underlayment beneath the shingles, no flashing under valleys, a slope over the living room of only 3½' in 12', and shingles in such area with only a 5¼″ reveal.

In June 1989, the house was scheduled for, but never inspected for, a certificate of occupancy by the Carroll County Building Inspector's office. Carroll County never issued a certificate of occupancy on this house. Between 1990 and 1992, renters made complaints to the Carroll County Building Inspector's office about construction and water problems; Harris was aware of such complaints prior to the sale to the plaintiffs. The Building Inspector's office refused to issue an occupancy certificate. On September 11, 1992, Harris swore in an affidavit in another suit with regard to this house that "[i]n fact, because of water problems, Carroll County would not and to this day will not issue a certificate of occupancy." However, Harris by deposition in this case, swore that a certificate of occupancy was issued in 1989; he failed to explain such material conflict in his testimony. He sought to provide instead a questionable document purporting to be

an authentic certificate of occupancy.

In early 1993, Harris, by brochure, represented that the house had "the look and feel of luxury," "so much quality," and "impressive stucco." The plaintiffs, Joseph M. and Creaestia Hall, saw the brochure and inquired of Harris. Harris made the oral, material misrepresentation that the house had been "code approved." Harris also represented that the house was a "quality" house, requiring "low maintenance," and that "you won't find a house that is better built than this one anywhere in Carrollton." The plaintiffs relied upon such oral representations in meeting the builder-seller's asking price.

The sales contract required "[s]eller to replace all rotten wood around all windows and doors." On April 21, 1993, Harris, as builder-seller, signed a "Seller's Property Disclosure Statement" representing that no building codes were violated and that there were no structural problems with the house. Murphy's inspection revealed that many, if not most, of the doors and windows with rotten wood were installed in 1989 or 1990 from the affixed manufacturer's codes and had not been replaced.

Harris requested that the plaintiffs use Multi-Pest Services, Inc. to inspect for termites and to provide the termite letter for the house without disclosing that he owned and controlled the company. The termite letter certified that the house was free of termites and that neither the termite inspector "nor the Company has, had or contemplate having any interest in the property involved, nor is acting in association with any party to the transaction." However, Murphy's inspection revealed present and past evidence of termite and carpenter ant damage and infestation. In 1993, prior to the sale of the house, Harris admitted to Caralee Haygood of the Georgia Department of Agriculture that the house had prior termite infestation and wood rot. Multi-Pest Services, Inc. reported to the plaintiffs that all the rotten wood had been replaced.

Plaintiffs presented (1) the affidavit of their expert witness, who gave his opinion based upon a thorough inspection, showing defects, negligent inspection and construction, breach of contract, and a basis for fraud; (2) their own affidavits; (3) the affidavit of a Carroll County Building Inspector; (4) Harris' affidavit in another case which conflicts with his sworn deposition testimony; (5) the deposition of Harris; (6) the deposition of Jack Barr; (7) the affidavit of Christopher Pyles; and (8) the affidavit of Caralee Haygood. However, the trial court granted the defendants' motion for summary judgment on all theories of liability. Because the trial court failed to follow *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), as to the procedure for the grant of summary judgment, for burden of proof, for favorable inferences for the plaintiffs, and for evidence presented in opposition to a motion for summary judgment, we reverse the trial

court's grant of summary judgment on all but one theory of liability.

1. Plaintiffs contend that the trial court erred in granting summary judgment as to the fraud count. We agree.

The defendant made material oral statements that were false that the house was "code approved"; that the house had a certificate of occupancy; and that the house was a "quality house." Such were material misrepresentations of fact, not puffing, because the house had never received an occupancy certificate, was clad in negligently and defectively installed synthetic stucco, had prior insect damage, and had a foundation that had never been waterproofed and which leaked water. The written real estate disclosure statement contained material misrepresentations of fact, e.g., minimal past water problems, no code violations, no structural problems, and minimal past termite and other insect damage. Multi-Pest Services, Inc. represented that rotten wood around doors, windows, and flashing had been replaced when it had not. Further, Harris sought to conceal the absence of a certificate of occupancy and absence of a final inspection by presenting an allegedly fraudulent official document issued long after the fact by a former county official. Harris did not disclose that the stucco had been improperly applied; that there had been repeated water problems; that the pest company was controlled by him; or that there had been insect damage, although he knew such were material facts important to the plaintiffs.

"Fraud is of itself subtle, and slight circumstances may be sufficient to carry conviction of its existence. [Cits.]" *McNeil v. Cowart*, 186 Ga. App. 411, 412 (1) (367 SE2d 291) (1988); accord *Joseph v. Bray*, 182 Ga. App. 131, 132 (354 SE2d 878) (1987). Evidence of moral fraud is peculiarly within the province of the jury to determine from the circumstances. *Ketcham v. Franklyn Gesner Fine Paintings*, 181 Ga. App. 549, 554 (353 SE2d 44) (1987); *Tolar Constr. Co. v. GAF Corp.*, 154 Ga. App. 127, 129 (267 SE2d 635) (1980), rev'd on other grounds, 246 Ga. 411 (271 SE2d 811) (1980). This was a case where material issues of fact regarding the existence of actual fraud and concealment were raised by the evidence for jury determination. Accordingly, the trial court erred in granting summary judgment as to the actual fraud allegations.

2. Plaintiffs contend that the trial court erred in granting summary judgment as to the claim for negligent misrepresentation. We agree.

The theory of negligent misrepresentation in Georgia is based upon *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983). In this case, statements were made directly to the plaintiffs to induce their reliance and action; these statements included the disclosure statement and the document presented to the plaintiffs as a valid certificate of occupancy. These representations

could be found by a jury to have been intentionally made to deceive or negligently made. Such statements could also include that the water problems were caused by bad paint or groundwater; that the house was in compliance with all building codes; that the synthetic stucco was adequate; and that all rotten wood around windows, doors, and flashing had been replaced. These statements created a fact issue as to negligent misrepresentation. Id. Plaintiffs presented evidence that after the exercise of due diligence, they reasonably relied upon such statements following their expert's inspection. There was evidence that plaintiffs relied upon such statements in purchasing the house to their detriment. Such evidence created a material issue of fact as to negligent misrepresentation. See *Real Estate Intl. v. Buggay*, 220 Ga. App. 449 (2) (469 SE2d 242) (1996); *Hightower v. Century 21 Farish Realty*, 214 Ga. App. 522 (2) (448 SE2d 271) (1994).

3. Plaintiffs contend that the trial court erred in granting summary judgment as to the claim for negligent repairs. We agree.

The affidavit of Murphy showed that certain windows that should have been replaced had not been replaced and were the original windows. Murphy's opinion was based on the manufacturer's identification of window models as "Doorco '89" and "Doorco '90," which were the years of installation, as well as the model years.

The expert testified that failure to replace such original windows constituted a failure to exercise reasonable care in deviation from the standard of care for such industry. This evidence created a jury issue. See *Williams v. Runion*, 173 Ga. App. 54 (325 SE2d 441) (1984); *Hudgins v. Bacon*, 171 Ga. App. 856 (1) (321 SE2d 359) (1984).

4. Plaintiffs contend that the trial court erred in granting summary judgment on the theory of breach of contract. We agree.

The special stipulation of the sales contract provided that the defendants would "replace all rotten wood." The evidence presented raised an issue of fact that rotten wood that preexisted the closing had never been replaced.

Further, implied in every contract by a builder-seller is the implied duty that construction was performed in a "fit and workmanlike manner." *Holmes v. Worthey*, 159 Ga. App. 262, 270 (282 SE2d 919) (1981), aff'd, 249 Ga. 104 (287 SE2d 9) (1982). Such contract duty is breached when the builder fails to exercise a reasonable degree of care, skill, and ability under similar conditions and like surrounding circumstances as is ordinarily employed by others in the same profession. See *Williams v. Runion*, supra at 60; *Hudgins v. Bacon*, supra at 860; *Howell v. Ayers*, 129 Ga. App. 899 (202 SE2d 189) (1973). There was substantial evidence in the record raising factual issues as to the failure of the defendants in building the house in a fit and workmanlike manner.

5. The plaintiffs contend that the trial court erred in granting

summary judgment as to the claim for negligent construction and negligence per se. We do not agree. While the evidence raised a strong issue that the defendants were negligent, the evidence is also unrebutted that the statute of limitation had run prior to the plaintiffs acquiring the property from the defendants, so that the defendants cannot be held liable under a negligence theory.

OCGA § 9-3-51 (a) (2) provides for a statute of repose of "eight years after substantial completion of such an improvement," within which period an action for damages to realty may be brought. Such statute did not extend the applicable statute of limitation, but provided the absolute limit within which any action could be brought under the appropriate statute of limitation. Such statute of repose provided the framework within which the appropriate statute of limitation was to operate. *Benning Constr. Co. v. Lakeshore Plaza Enterprises*, 240 Ga. 426, 427-428 (241 SE2d 184) (1977); *R. L. Sanders Roofing Co. v. Miller*, 153 Ga. App. 225, 226 (1) (264 SE2d 731) (1980); *Landon v. Williams Bros. Concrete Co.*, 149 Ga. App. 699 (256 SE2d 99) (1979). An action under OCGA § 9-3-30 for a construction defect for improvement to realty must be brought within four years of substantial completion of the work, because the right of action immediately vested for the defective work at such time, commencing the running of the statute of limitation. See *Corp. of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365 (1) (368 SE2d 732) (1988); *Hanna v. McWilliams*, 213 Ga. App. 648, 649-650 (2) (446 SE2d 741) (1994); *Broadfoot v. C & S Nat. Bank*, 208 Ga. App. 382, 384 (430 SE2d 638) (1993), overruled on other grounds, *Hanna v. McWilliams*, supra at 651.

This action was commenced on April 9, 1997, which was within the eight years of the statute of repose, but which was more than four years after the substantial completion of the construction of the house and defendants' acts or omissions in constructing, inspecting, and accepting the house in a damaged and defective condition. Defendants retained title to the house for four years and until the statute of limitation for tortious damage to realty had run. The house was transferred to the plaintiffs on May 12, 1993, which barred any action by a successor in title, because the house was completed in late May or June 1989. Substantial completion occurred prior to the completion date; therefore, the four years ran either in May or in an earlier month in 1993. Even if fraud tolled the statute of limitation for the few remaining days of the statute of limitation in May 1993, after plaintiffs acquired the house, the suit in April 1997 was brought more than such short unexpired time after the discovery of the fraud so that the bar of the statute clearly attached.

Arguably, the defendant with title to the house had a cause of action in tort against the other defendants to the extent that such

defendant was not a joint tortfeasor; thus, this statute of limitation ran against such prior owner prior to the title passing to the plaintiffs. If an action is barred against a prior owner, then it is also barred against a subsequent owner. *U-Haul Co. of Western Ga. v. Abreu & Robeson, Inc.*, 247 Ga. 565, 567 (277 SE2d 497) (1981).

*Judgment affirmed in part and reversed in part and case remanded. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 11, 1999 —
RECONSIDERATION DENIED SEPTEMBER 3, 1999.

*Gorby & Reeves, Douglas R. Kertscher, Mary D. Peters*, for appellants.

*Hopkins & Taylor, James J. Hopkins*, for appellees.