S01G1036. COLORMATCH EXTERIORS, INC. v. HICKEY et al.
S01G1063. BOWDEN et al. v. HICKEY et al.
(569 SE2d 495)

CARLEY, Justice.

In early April of 1995, David V. Bowden, Kevin Mathews, Mathews Home Builders, Inc., and Mathews Custom Homes, Inc. (Builders) finished construction of a house for which they did not yet have a buyer. On April 26, 1995, the Chatham County Building Inspections Department completed its inspection process and, in July, 1995, issued a certificate of occupancy. Builders then conveyed the property to David and Kimberly Hickey (Plaintiffs). After Plaintiffs discovered moisture damage under the house's synthetic stucco cladding, they brought suit on April 26, 1999 against Builders and the manufacturer of the synthetic stucco, Colormatch Exteriors, Inc. (Appellants). Plaintiffs asserted products liability claims as to Colormatch and, with respect to Builders, alleged negligent construc-

tion, breach of warranty, and negligent misrepresentation. The trial court granted summary judgment in favor of Appellants on the ground that the applicable statutes of limitation had expired. The Court of Appeals reversed, concluding that the trial court should have applied the six-year limitation period for contract actions to the claim for breach of implied warranty, and that the four-year statute of limitations for damage to realty did not preclude the remaining tort, fraud, and products liability claims. *Hickey v. Bowden*, 248 Ga. App. 647 (548 SE2d 347) (2001). The rationale for the latter conclusion was that the earliest date on which the house could be deemed substantially completed, so as to start the four-year period, was the date on which the certificate of occupancy was issued, at which time the house could be occupied legally. *Hickey v. Bowden*, supra at 650 (2). In order to consider this holding, we granted certiorari in Case Number S01G1036 as to Colormatch and in Case Number S01G1063 as to Builders. We conclude that in those circumstances where, as here, a contractor makes improvements to his own real property for the express purpose of sale and the property actually is sold, the applicable period of limitations for claims of damage to realty does not begin to run until the initial sale of the improved property, regardless of the date of "substantial completion." However, the limitations period begins to run against the manufacturer of materials necessary for the improvement on the date of substantial completion, which we hold is not dependent on the issuance of a certificate of occupancy. Accordingly, we reverse the judgment of the Court of Appeals in Case Number S01G1036, but affirm in Case Number S01G1063 under the "right for any reason" principle. See *Dental One Assoc. v. JKR Realty Assoc.*, 269 Ga. 616, 617 (501 SE2d 497) (1998).

1. The statute of limitations which is applicable to Plaintiffs' tort claims, including their products liability claims, is found in OCGA § 9-3-30 (a). *Corporation of Mercer Univ. v. Nat. Gypsum Co.*, 258 Ga. 365, 366 (1) (368 SE2d 732) (1988); *Mitchell v. Contractors Specialty Supply*, 247 Ga. App. 628, 629 (544 SE2d 533) (2001); *Mitchell v. Jones*, 247 Ga. App. 113, 115 (2) (541 SE2d 103) (2000); *Hanna v. McWilliams*, 213 Ga. App. 648, 649 (2) (a) (446 SE2d 741) (1994). Compare OCGA § 9-3-30 (b) (providing a special rule for synthetic stucco causes of action which do not expire before March 28, 2000); *Daniel v. American Optical Corp.*, 251 Ga. 166, 167 (1) (304 SE2d 383) (1983). OCGA § 9-3-30 (a) provides that "[a]ll actions for trespass upon or damage to realty shall be brought within four years after the right of action accrues." See *Daniel v. American Optical Corp.*, supra at 168 (1) (the similar language of OCGA § 9-3-33 demonstrates that the scope of its application "is determined by the nature of the injury sustained rather than the legal theory underlying the claim for relief").

By its terms, the four-year time period established in OCGA § 9-3-30 (a) only began running when Plaintiffs' rights of action in tort accrued. For statute of limitations purposes, the general rule for determining the time a cause of action accrues is well-settled in Georgia. "The true test to determine when a cause of action accrues is to ascertain the time when the plaintiff could first have maintained [his or] her action to a successful result. [Cit.]" *Travis Pruitt & Assoc. v. Bowling*, 238 Ga. App. 225, 226 (1) (518 SE2d 453) (1999). Thus, Plaintiffs could have no cause of action for damage to the property under the theories of negligence and strict liability before they incurred some damage. OCGA §§ 51-1-8, 51-1-11 (b) (1); *Travis Pruitt & Assoc. v. Bowling*, supra at 226 (1). Damage to property arising out of construction is generally considered to occur at the time of the defendant-contractor's "substantial completion" of the project, because damages usually become immediately ascertainable to the plaintiff-owner at that time. *Corporation of Mercer Univ. v. Nat. Gypsum Co.*, supra at 366 (1); *Travis Pruitt & Assoc. v. Bowling*, supra at 226 (1); *Hanna v. McWilliams*, supra at 649 (2) (a). The issue presented for resolution is whether this general rule of "substantial completion" is applicable under the circumstances presented in this case.

*Case Number S01G1063*

2. Whatever the date of substantial completion, it occurred before title to the property was conveyed to the Plaintiffs. In the suit against Builders, the issue is whether Plaintiffs' rights of action nevertheless accrued upon substantial completion of the house even though Builders were still the owners of the property at that time. *Travis Pruitt* appropriately distinguishes cases involving "alleged negligent design and construction of the plaintiff's own property. [Cits.]" *Travis Pruitt & Assoc. v. Bowling*, supra at 226 (1). If the owner contracts with a builder and intends to retain the improved property after completion of the project, he can maintain an action against the contractor immediately upon substantial completion of the allegedly negligent construction and, thus, there is no question that the statute of limitations begins to run at that time. In such a case, the plaintiff is the owner of the property at the time of substantial completion. Where, however, the contractor is a developer who still owns the property at the time of substantial completion, he obviously cannot maintain an action for negligent construction or misrepresentation against himself. If the new house was constructed by an owner-builder for the purpose of sale and the property actually is sold, then the only persons who are injured by any negligence of the builder and who can successfully maintain an action therefor are the

purchaser and his successors. With respect to Builders, this case is analogous to *Travis Pruitt*, where the plaintiff owned only the neighboring property and could not have successfully maintained an action until the adjoining defective property first caused damage to her own property. Thus, the statute only began to run on the tort claims against Builders on the date that Plaintiffs bought the property. They filed suit within that four-year period.

However, if, without bringing suit, Plaintiffs had sold their house more than four years after purchasing it, that conveyance would not have revived the cause of action and their grantee could not maintain an action. *U-Haul Co. v. Abreu & Robeson, Inc.*, 247 Ga. 565, 567 (277 SE2d 497) (1981). See also *Armstrong v. Royal Lakes Assoc.*, 232 Ga. App. 643, 644 (1) (502 SE2d 758) (1998). Where, as here, however, the purchaser of new construction or his successor brings suit against the builder-seller within four years of the date of sale, the statute of limitations does not bar the action. *Rosenheimer v. Tidal Constr. Co.*, 250 Ga. App. 145, 146 (1) (550 SE2d 698) (2001) is overruled to the extent that it followed the Court of Appeals' decision in the instant case as to Builders.

Various circumstances may delay the sale of property by a developer and cause a corresponding delay in the accrual of tort claims for damage to realty. However, the General Assembly has provided for such an eventuality by enacting statutes of ultimate repose. The purpose of these statutes " 'is to impose an outside limit on the bringing of lawsuits which are otherwise brought within the applicable statutory period after the action has accrued. [Cit.]' " *Armstrong v. Royal Lakes Assoc.*, supra at 645 (1). Statutes of repose apply "regardless of when the injury occurs or, indeed, whether a cause of action has accrued at all prior to the expiration of the period. [Cit.]" *Hanna v. McWilliams*, supra at 651 (3). OCGA § 9-3-51 establishes a reasonable outside time limit beyond which builders are insulated from liability. See *Gwinnett Place Assoc. v. Pharr Engineering*, 215 Ga. App. 53, 55 (1) (a) (449 SE2d 889) (1994). This statute of repose can commence to run against the purchaser of new construction "even *before* [he] acquires legal title to the real property which is the subject of the deficient improvement. . . ." (Emphasis in original.) *Hanna v. McWilliams*, supra at 651 (3). However, the outside time limit of that statute was not reached here. Accordingly, the Court of Appeals' reversal of the grant of Builders' motion for summary judgment is affirmed.

*Case Number S01G1036*

3. Our analysis is entirely different with regard to Colormatch. Prior to selling the property to Plaintiffs, Builders were the owners of

the property and could have brought a products liability suit against Colormatch. See *Lamb v. Georgia-Pacific Corp.*, 194 Ga. App. 848 (2) (392 SE2d 307) (1990). Because Builders were the owners, their causes of action would have accrued upon substantial completion of the project. See *Corporation of Mercer Univ. v. Nat. Gypsum Co.*, supra at 366 (1); *Travis Pruitt & Assoc. v. Bowling*, supra at 226 (1); *Hanna v. McWilliams*, supra at 649 (2) (a). *Corporation of Mercer Univ.*, supra, overruled *Lumbermen's Mut. Cas. Co. v. Pattillo Constr. Co.*, 254 Ga. 461 (330 SE2d 344) (1985), which held, among other things, that a cause of action does not accrue under OCGA § 9-3-30 upon substantial completion of the improvement, because that is the same time that the statute of repose in OCGA § 9-3-51 (a) commences to run. By overruling *Lumbermen's*, this Court implied that a cause of action accrues under OCGA § 9-3-30 at the time of substantial completion as defined in the statute of repose. Under that definition, "substantial completion" is "the date when construction was sufficiently completed, in accordance with the contract as modified by any change order agreed to by the parties, so that the owner could occupy the project for the use for which it was intended." OCGA § 9-3-50 (2). Utilization of this definition is logical, avoids the anomaly of having a judicial definition which conflicts with an available statutory definition, and is consistent with Court of Appeals opinions which correctly analyze *Lumbermen's* and indicate that statutes of limitation do not have to be construed so as to begin to run at a different time from the applicable statute of repose. *Mitchell v. Contractors Specialty Supply*, supra at 630; *Howard v. McFarland*, 237 Ga. App. 483, 486 (3) (a) (515 SE2d 629) (1999); *Armstrong v. Royal Lakes Assoc.*, supra at 645 (1).

Because Colormatch is the manufacturer of only one component of the house, there arises the question of whether the statute of limitations begins to run upon substantial completion of the entire building or of the stucco installation only. Compare *Hanna v. McWilliams*, supra at 652 (3), with *Mitchell v. Contractors Specialty Supply*, supra at 629. While in many cases, the difference between the two dates would be crucial, in this case the statute of limitations has run regardless of which date is used. As discussed below, the period of limitations as to Colormatch expired when measured from substantial completion of the entire house. Obviously, the same result would be reached even if the four-year period commenced on the earlier date of the attachment of the stucco to the building. Accordingly, we need not determine in this case whether the causes of action against Colormatch accrued sooner than substantial completion of the entire residence. That is a question for another day.

The Court of Appeals' conclusion that a certificate of occupancy was a prerequisite to substantial completion is contrary to its own

precedent. In *Hanna v. McWilliams*, supra, the plaintiffs specifically contended that their house was substantially completed no earlier than the date when the certificate of occupancy was issued. The Court of Appeals implicitly rejected this contention by holding that the statute of repose on a fireplace improvement to real property began to run upon substantial completion of the fireplace. *Hanna v. McWilliams*, supra at 652 (3). In *Hall v. Harris*, 239 Ga. App. 812, 818 (5) (521 SE2d 638) (1999), the Court of Appeals held that, for purposes of the statute of limitations, the building was substantially complete, even though the opinion clearly reveals that no certificate of occupancy was ever issued. Furthermore, the definition of "substantial completion" in OCGA § 9-3-50 (2) does not require that the improvement can be occupied "legally," but simply applies in instances where "the owner *could* occupy the project for the use for which it was intended." (Emphasis supplied.) We conclude that the issuance of a certificate of occupancy by a governmental agency is not required as a matter of law in order to establish substantial completion. See *Meyer v. Bryson*, 891 SW2d 223, 225 (Tenn. App. 1994). A building is substantially complete where the actual construction is finished and it could be physically used, despite some delay in the issuance of a certificate of occupancy. Accordingly, the cause of action against Colormatch accrued, as the trial court held, prior to April 26, 1995. "The fact that a building was sold and the present suit is being brought by a subsequent owner does not revive the cause which was barred as to the original owners." *U-Haul Co. v. Abreu & Robeson*, supra at 567. See also *Armstrong v. Royal Lakes Assoc.*, supra at 644 (1). Since Builders would have been precluded from bringing suit against Colormatch on April 26, 1999, Plaintiffs were likewise barred. Thus, the Court of Appeals erred in reversing the grant of summary judgment in favor of Colormatch.

4. Nothing in this opinion affects the holding of the Court of Appeals that the six-year limitation period applies to Plaintiffs' claims for breach of implied warranty. See generally *Shadix v. Carroll County*, 274 Ga. 560 (554 SE2d 465) (2001).

*Judgment reversed in Case No. S01G1036. Judgment affirmed in Case No. S01G1063. All the Justices concur.*

DECIDED JUNE 10, 2002.

*Drew, Eckl & Farnham, Hall F. McKinley III, Andrew D. Horowitz*, for Colormatch Exteriors.

*Weisenbaker & Brooks, Eugene C. Brooks IV, Russell M. Stookey*, for Hickey et al.

*McCorkle, Pedigo & Johnson, David H. Johnson, Amy E. Edgy*,

for Bowden et al.
*Holland & Knight, Frank O. Brown, Jr.*, amicus curiae.