A04A1359. WESTERN PACIFIC MUTUAL INSURANCE
COMPANY v. DAVIES et al.
(601 SE2d 363)

ELDRIDGE, Judge.

On August 30, 1993, Western Pacific Mutual Insurance Company ("Western") became the insurer for the limited home warranty given to John L. and Mary S. Davies on the purchase that day of their newly constructed house. Under the first two years of such limited warranty, the warranty was given by the builder, and in years three through ten, Western was liable on the limited warranty. On December 4, 1995, outside the two-year warranty period, the Davies discovered a termite infestation and subsequently discovered trapped moisture in the walls and extensive termite damage. A claim was made against Western, which it denied because the damage was not to major structural members under the limited warranty and was caused by termites, which it contended were excluded under a

---

[3] Id. at 147 (2).

warranty exclusion. The Davies filed suit, which was timely answered and filed a motion for summary judgment. The trial court denied Western's motion for summary judgment; on de novo consideration, we affirm.

1. Western contends that the trial court erred in denying the motion for summary judgment, because the limited warranty does not cover and specifically excludes the Davies' claim.

Western contends that to come within its limited warranty the major structural defect must: (1) cause physical damage to one or more of the following specified load-bearing components of the home; (2) cause the failure of the specific major structural components; and (3) affect its load-bearing function to the degree that it materially affects the physical safety of the occupants of the home. The structural members listed as load-bearing components of the home are: (i) roof framing members (rafters and trusses); (ii) floor framing members (joists and trusses); (iii) bearing walls; (iv) columns; (v) lintels (other than lintels supporting veneers); (vi) girders; (vii) load-bearing beams; and (viii) foundation systems and footings.

> In Georgia, an insurer may fix the terms of its policy as it wishes, insuring against certain risks and excluding others, provided the terms are not contrary to law. Where an insurer grants coverage to an insured, any exclusions from that coverage must be defined clearly and distinctly. Insurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms. However, if a provision of an insurance contract is susceptible of two or more constructions, even when the multiple constructions are all logical and reasonable, it is ambiguous, and the statutory rules of contract construction will be applied. Pursuant to the rule of construction set forth at OCGA § 13-2-2 (5), the contract will be construed strictly against the insurer/drafter and in favor of the insured.

(Citations omitted.) *Hurst v. Grange Mut. Cas. Co.*, 266 Ga. 712, 716 (4) (470 SE2d 659) (1996); accord *Peachtree Cas. Ins. Co. v. Kim*, 236 Ga. App. 689, 690 (512 SE2d 46) (1999).

The record indicates that there exists a jury question under warranty condition one, whether or not major load-bearing components were defective. The Davies testified that there were problems with water and moisture both inside the structure and within the walls. The Davies' expert's inspection revealed "significant and extensive structural damage due to wood destroying insect activity and moisture" and trapped moisture in the walls. "Extensive repairs are needed to sill plates, band boards and floor joists behind the garage

below the master bathroom." "None of the foundation sill plates along the perimeter of the crawl space appears to be pressure treated and there was no moisture barrier between the sill plates and the foundation as required by the Building Code. (Ref. 1706.1)." "The sill plates are not properly anchored to the foundation as required by the Building Code. (Ref. 1706.1)." "There are inadequate number of nails in the ledger strip (the wood strip attached to the beam upon which the floor joists rest)." "There is some improper notching of the floor joists below the master bathroom." "Framing at the exterior deck is substandard." "The deck is not bolted to the house." The front of the house was covered with artificial or synthetic stucco and foam, which is called an Exterior Insulating and Finish System ("EIFS") and which, if not properly installed, causes the entry, absorption, and retention of moisture within the exterior walls. The lack of pressure-treated lumber, water leaking in, and moisture trapped in the EIFS led to the termite infestation, which was an indirect cause and concurrent cause of damage. Clearly, the defects found above create a jury question as to whether, within the definition of load-bearing components, such defects come within warranty condition one, and summary judgment was properly denied.

The contract of limited warranty is ambiguous as to the meaning of "causing the failure" in the second warranty condition, because the term "failure" is not defined within the agreement. It can mean partial, total, or imminent failure. To come within the limited warranty period means that the failure advanced from a state undetectable by the builder and building inspector to a detectable state by an inspector and homeowner. Failure could mean gradual failure or sudden failure, which would make the exclusion ambiguous.[1] Failure may also mean structural members that were unsuitable for the intended use from the inception of installation, because such structural member failed to meet the Building Code and failed to be suitable for such use in the industry for the purpose for which the builder used such noncode building materials. Finally, as urged by Western, failure could mean a total or near total inability to carry the intended load any longer without risk of injury to the occupants within ten years of construction. Such total failure of a major structural member as urged by Western would be less than a collapse, because Western used failure instead of collapse in the warranty. "Collapse" has been defined as: "a complete change in a structure,

---

[1] These cases are cited to demonstrate how the time within which a condition may arise can be ambiguous. The sudden accidental pollution by release of chemicals caused the pollution insurance exclusion to be ambiguous. *Claussen v. Aetna Cas. &c. Co.*, 259 Ga. 333, 334 (1) (380 SE2d 686) (1989); *Kerr-McGee Corp. v. Ga. Cas. &c. Co.*, 256 Ga. App. 458, 460 (568 SE2d 484) (2002) (physical precedent only).

where the building loses its distinctive character as a building and when the substantial integrity of the building has been damaged to such extent that it has been materially impaired and rendered uninhabitable." (Citations and punctuation omitted.) *Nationwide &c. Ins. Co. v. Tomlin*, 181 Ga. App. 413, 415 (1) (352 SE2d 612) (1986) (physical precedent only). "[W]hen 'collapse' is not otherwise defined in an insurance policy, it shall be deemed as having occurred when there is a reasonably detectable serious impairment of structural integrity." Id. at 415. "[A] condition may amount to collapse where the structure's integrity is seriously impaired and collapse is imminent." *Stagl v. Assurance Co. of America*, 245 Ga. App. 8, 10 (2) (539 SE2d 173) (2000). Thus, a failure means a structure in some physical condition less than collapse.

"Unless otherwise defined in the contract, terms in an insurance policy are given their ordinary and customary meaning." *Stagl v. Assurance Co. of America*, supra at 10 (1). Thus, according to Webster's New World Dictionary, Second College Edition, "failure" means "1. the act, state, or fact of failing; specif., a) a falling short b) a losing power or strength c) a breakdown in operation or function d) neglect or omission e) a not succeeding in doing or becoming." Thus, "failure" can be the use of a major structural material that is unsuited for the purpose, i.e., "falling short," or "not succeeding in doing or becoming," or the deterioration of a major structural member that has "lost power or strength." In construing a contract of insurance to ascertain the intent of the parties, the court should give a term or phrase in the contract its ordinary meaning or common signification as defined by dictionaries, because they supply the plain, ordinary, and popular sense unless the words are terms of art. OCGA § 13-2-2 (2); *State Farm Fire &c. Co. v. American Hardware Mut. Ins. Co.*, 224 Ga. App. 789, 792 (3) (482 SE2d 714) (1997); *Henderson v. Henderson*, 152 Ga. App. 846, 847 (1) (264 SE2d 299) (1979).

The third warranty condition is also vague and ambiguous as to when the risk to physical safety occurs. Thus, "materially affects the physical safety of the occupants of the home" is vague and ambiguous. If the major structural member in one area of the house has reached such degree of failure, then all other major structural defects, which have not reached such failure, have such condition satisfied; this is the most liberal construction. Western argues that the failure must be so advanced that the occupant is placed in imminent risk of injury. Since any risk to human life or health would place the "physical safety of the occupants" at risk, then it is not necessary that the major structural member reach that condition of failure that an imminent risk to health or injury to the occupants exists, but such condition would be satisfied when any part of the house's structural member poses a risk to health or injury. "When two provisions of an insurance

contract conflict or are repugnant to each other, the provision most favorable to the insured shall apply." *Home Ins. Co. v. Sunrise Carpet Indus.*, 229 Ga. App. 268, 271 (1) (493 SE2d 641) (1997); accord *Cole v. Life Ins. Co. of Ga.*, 236 Ga. App. 229, 230 (511 SE2d 596) (1999). Thus, to require an insured to place his or his family's life, health, or body at imminent risk is repugnant to a contract of warranty. *Home Ins. Co. v. Sunrise Carpet Indus.*, supra at 271. In this case, the deck is not anchored to the house, properly framed, and needed additional vertical supports, which placed any occupant of the house at risk, satisfying this condition as to all major structural defects.

Western contends that Section B.2.f excludes coverage for "loss or damage caused to the home . . . directly or indirectly by insects." The Davies contend that their loss came from the inception of the construction of the house from the improper and inappropriate use of EIFS and wood major structural members that were inappropriate, i.e., not pressure treated, because both building materials caused moisture to enter and to be trapped by the moisture absorbing character of the insulating materials, EIFS. In turn, the moisture caused damage both directly by deterioration or rotting and indirectly by attracting termites; the untreated wood in major structural members was subject to damage and destruction by the termites as well as by rot.

Here, the term "loss or damage caused to the home . . . indirectly by insects" is vague and ambiguous, because it is urged by Western that any concurrent proximate cause of damage or loss to the house by insects will also exclude all other causes of damages, i.e., moisture. An alternative reasonable meaning is that materials such as EIFS improperly installed and untreated wood in major structural members that absorb and retain moisture act as a primary defect from the inception that leads to and aggravates termite infestation, which is the indirect cause of damage. Without termite infestation, the leaking, absorption, and retention of moisture from the EIFS would, over the course of the warranty period, independently cause damage and deterioration of the major structural members absent any termite damage. Thus, moisture and termites could be found to be the concurrent proximate cause of damage to the house.

This limited warranty attempts to exclude from coverage four major problem areas of new home construction defects: (1) defective compressed or artificial siding; (2) defective artificial stucco or the negligent installation of it;[2] (3) defective plastic piping; and (4) termite

---

[2] The following citations are to demonstrate the frequency of moisture problems and to show how long it takes for such moisture problems to cause damage. Suits based upon moisture damage to a new home within one to six years of completion occurred when artificial or synthetic

infestation caused or aggravated by these other defects.[3] As a consequence of such exclusions and conditions, even major structural member defects are drastically limited by such conditions.[4]

When a contract term may be subject to reasonable alternative meanings, such term is ambiguous, requiring the trial court to apply the rules of contract construction; ambiguity exists when a contract term or condition is indistinct, uncertain of meaning or expression, and duplicitous. *Taylor v. Estes*, 85 Ga. App. 716, 718 (1) (70 SE2d 82) (1952). Stated differently, "a word or phrase is ambiguous only when it is of uncertain meaning, and may be fairly understood in more ways than one. An ambiguity, then, involves a choice between two or more constructions of the contract." (Citations and punctuation omitted.) *Burden v. Thomas*, 104 Ga. App. 300, 302 (121 SE2d 684) (1961).

In applying the rules of construction to an insurance contract, "the test is not what the insurer intended its words to mean, but rather what a reasonable person in the insured's position would understand them to mean." *Gulf Ins. Co. v. Mathis*, 183 Ga. App. 323, 324 (358 SE2d 850) (1987). "[E]xclusions to [an insurance policy] require a narrow construction on the theory that the insurer, having affirmatively expressed coverage through broad promises, assumes a duty to define any limitations on that coverage in clear and explicit terms." (Citations and punctuation omitted.) *Alley v. Great American Ins. Co.*, 160 Ga. App. 597, 600 (287 SE2d 613) (1981). When the language of an insurance contract is ambiguous and subject to more than one reasonable construction, the policy must be construed in the light most favorable to the insured, which provides him with coverage. *Claussen v. Aetna Cas. &c. Co.*, supra at 334 (1); *Alley v. Great American Ins. Co.*, supra at 600. Thus, an exclusion sought to be

---

stucco cladding was either defective, improperly used, or negligently installed. *Colormatch Exteriors v. Hickey*, 275 Ga. 249 (569 SE2d 495) (2002) (four years); *Clearwater Constr. Co. v. McClung*, 261 Ga. App. 789, 790 (584 SE2d 61) (2003) (two years); *Stancliff v. Brown & Webb Builders*, 254 Ga. App. 224 (561 SE2d 438) (2002) (less than four years); *Gropper v. STO Corp.*, 250 Ga. App. 820 (552 SE2d 118) (2001) (same); *Rosenheimer v. Tidal Constr. Co.*, 250 Ga. App. 145 (550 SE2d 698) (2001) (five years); *Stimson v. George Laycock, Inc.*, 247 Ga. App. 1 (542 SE2d 121) (2000); *Mitchell v. Jones*, 247 Ga. App. 113 (541 SE2d 103) (2000) (barred by four-year statute of limitation), overruled on other grounds, *Colormatch Exteriors v. Hickey*, supra; *Smith v. KLS Constr. Co.*, 247 Ga. App. 493 (544 SE2d 197) (2001) (five years); *Mitchell v. Contractors Specialty Supply*, 247 Ga. App. 628 (544 SE2d 533) (2001) (same); *Hall v. Harris*, 239 Ga. App. 812 (521 SE2d 638) (1999) (less than four years); *Dayoub v. Yates-Astro Termite Pest Control Co.*, 239 Ga. App. 578 (521 SE2d 600) (1999) (same); *Regency Exec. Plaza &c. v. Wilmock, Inc.*, 237 Ga. App. 193 (514 SE2d 446) (1999) (same).

[3] Moisture and termite damage caused by use of EIFS. See *Dayoub v. Yates-Astro Termite Pest Control Co.*, supra at 579; *Hall v. Harris*, supra at 813-815.

[4] Even under the facts of a fraud case where major structural defects were concealed, the three conditions as urged by Western could not have been satisfied. *Smiley v. S & J Inves.*, 260 Ga. App. 493 (580 SE2d 283) (2003).

invoked by the insurer will be liberally construed in favor of the insured and strictly construed against the insurer when it is not clear and unequivocal, as in this case. *First Ga. Ins. Co. v. Goodrum*, 187 Ga. App. 314, 315 (370 SE2d 162) (1988).

The intent of the parties is that a contract of insurance or warranty is to indemnify the insured from loss for a financial consideration with reasonable exclusions as a home construction warranty.

> If a policy of insurance is so drawn as to require an interpretation, and is fairly susceptible of two different constructions, the one will be adopted most favorable to the insured. Policies of insurance will be liberally construed in favor of the object to be accomplished, and conditions and provisions therein will be strictly construed against the insurer, as they are issued upon printed forms, prepared by experts at the insurer's instance, in the preparation of which the insured has no voice.[5]

*Davis v. United American Life Ins. Co.*, 215 Ga. 521, 527 (2) (111 SE2d 488) (1959); accord *First Ga. Ins. Co. v. Goodrum*, supra at 315. Thus, a contract or warranty that is worded to exclude virtually all risk of loss or that fails to provide protection from loss would cease to be a contract of insurance or warranty.[6] Thus, this ambiguous limited warranty must be construed liberally in favor of the homeowner, because the meaning of the insurance contract must be determined "from a consideration of all the evidence, just what the purpose, intention and design of the parties were." (Punctuation omitted.) *Taylor v. Estes*, supra at 718. "[I]nsurance contracts are to be read in accordance with the reasonable expectations of the insured where possible." *Home Ins. Co. v. Sunrise Carpet Indus.*, supra at 271 (1).

Whether or not there has been a "failure of specific major structural component," whether such failure "affects its load-bearing function to the degree that it materially affects the physical safety of the occupants of the home," when the "physical safety of occupants of the house" arises within the meaning of the limited warranty, and

---

[5] In this case, the Davies had no choice about a home warranty, because the VA mortgage mandated a warranty, and the builder used Western. Contracts of adhesion, where the buyer must take it or leave it by acquiescing to the imposed conditions, are legal in Georgia; however, such standardized contracts are strictly construed against the drafter. See *Walton EMC v. Snyder*, 226 Ga. App. 673, 678, n. 6 (487 SE2d 613) (1997); see also *Rossville Fed. Sav. &c. Assn. v. Ins. Co. of North America*, 121 Ga. App. 435, 438 (174 SE2d 204) (1970).

[6] To determine the intent of the parties regarding insurance coverage, the four corners of the agreement and the surrounding circumstances must be considered. *Progressive Preferred Ins. Co. v. Brown*, 261 Ga. 837, 838 (1) (413 SE2d 430) (1992).

whether moisture was a concurrent proximate cause of damage present factual questions for jury determination.

2. Western contends that the trial court erred in denying its motion for summary judgment, because the trial court failed to use a construction of the warranty that upholds the warranty as a whole and in every part. This Division is controlled by Division 1.

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED JUNE 3, 2004.

*Troutman Sanders, Andrew M. Greene, Robert J. Moye III*, for appellant.
*Edmund A. Waller*, for appellees.