

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-28-2008

# Ross v. MetLife Ins Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-4651

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Ross v. MetLife Ins Co" (2008). *2008 Decisions*. Paper 315.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/315

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-4651

———————

SAUL ROSS,
JEANETTE J. ANDREWS,
ARTRALIA B. ANDREWS,
Individually and on Behalf of All Others
Similarly Situated

v.

METROPOLITAN LIFE INSURANCE COMPANY,
a New York corporation

Jeanette J. Andrews,
Artralia B. Andrews,

<u>Appellants</u>

———————

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 05-cv-00433)
District Judge: Hon. Donetta W. Ambrose

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 20, 2008

BEFORE: SMITH and  COWEN , <u>Circuit Judges</u>
and THOMPSON*, <u>District Judge</u>

———————

*Honorable Anne E. Thompson, Senior United States District Judge for the District of
New Jersey, sitting by designation.

---

OPINION

---

COWEN, Circuit Judge.

Appellants Jeanette J. Andrews and Artralia B. Andrews appeal from the order of the United States District Court for the Western District of Pennsylvania granting the motion for summary judgment filed by Appellee Metropolitan Life Insurance Company ("MetLife").  We will affirm.

## I.

Appellants purchased from MetLife whole life insurance policies for their children and grandchildren.  The children were thirteen, eight, three, and half a year old  at the time the respective policies were issued.  Prior to the purchases, the MetLife representative completed standard-form applications for each policy.  These forms are not unique to juveniles, and one of the questions inquired about the proposed insured's tobacco use.  Although she did not ask the Appellants themselves about tobacco use, the representative simply checked "never" for the answer to this question.  It appears, however, that MetLife actually uses an aggregate or "blend" of smoker and non-smoker mortality rates to calculate premiums for all juvenile insureds, regardless of whether or not the specific juvenile smokes.  Appellants signed the respective applications.  By signing the applications, Appellants specifically agreed that "[m]y statements are the

basis of any policy issued." (See, e.g., JA104.)

The representative also provided Appellants with various policy illustrations. The illustrations listed premium amounts and indicated a "Standard Nonsmoker" risk class for the proposed insureds. (See, e.g., JA245.) They further stated that, "[i]f you apply for this policy and the actual age, sex or risk class as shown in the policy (if issued) are different, your MetLife representative will provide you with a revised illustration and can explain any differences to you." (See, e.g., id.) Appellants additionally received a copy of MetLife's Consumer Privacy Notice, informing them that "[w]e will tell you if we cannot give you the coverage you asked for or if we can only provide it on a modified basis." (JA895.)

MetLife then issued the juvenile life insurance policies. The policies stated that "[t]his policy includes any rider and, with the application attached when the policy is issued, makes up the entire contract." (See, e.g., JA91.) Likewise, application statements were deemed to be "representations and not warranties." (See, e.g., id.) The policies in turn set forth the premium amounts due each month, which matched the figures earlier provided in the illustrations. Under the "POLICY SPECIFICATIONS" section of the policies, the respective juveniles were listed as "POLICY CLASSIFICATION . . . . STANDARD." (See, e.g., JA84.)

Appellants did not return the issued policies within the 10-day "free look" period. The policies therefore went into effect, and Appellants paid the specified premiums. But they eventually filed, together with another plaintiff named Saul Ross, a putative class

3

action in the District Court, alleging that MetLife improperly treated the insurance policies as "smoker-based" in its premium rate calculations even though the applications themselves showed that the juveniles did not use any tobacco products. The Complaint asserted four causes of action: (1) breach of contract; (2) breach of fiduciary duty; (3) constructive fraud; and (4) unjust enrichment and imposition of a constructive trust.

The District Court subsequently dismissed Ross's claims in their entirety pursuant to a prior release and settlement agreement, and Ross is not a party to the current appeal. The District Court also dismissed Appellants' fiduciary duty claim, but it permitted their remaining claims to go forward. Following discovery, MetLife and Appellants filed cross-motions for summary judgment, and Appellants also moved for class certification. The District Court ultimately granted MetLife's summary judgment motion as to the breach of contract claim, denied Appellants' motion for summary judgment, and denied as moot their motion for class certification. Appellants then voluntarily dismissed their remaining claims for constructive fraud and unjust enrichment, and filed a timely notice of appeal.

## II.

Appellants' individual claim for breach of contract constitutes the only theory of liability at issue in this current appeal.[1] The parties appear to agree that the District Court

---

[1] The District Court possessed jurisdiction over this diversity matter pursuant to 28 U.S.C. § 1332, and we in turn have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review over the District Court's summary judgment ruling and apply the same legal standard that the District Court should apply. See, e.g., Curley v. Klem, 298

4

was correct to apply Georgia law in this case. They also generally concur as to the actual rules of Georgia law applicable to insurance contracts. As the District Court noted, when the language of the insurance contract itself is clear and unambiguous, construction of the contract is unnecessary. Instead, the clear and unambiguous terms of an insurance policy "require no construction, and the plain meaning of such terms must be given full effect, regardless of whether they might be beneficial to the insurer or detrimental to the insured." Tripp v. All State Ins. Co., 584 S.E.2d 692, 694 (Ga. Ct. App. 2003) (quotation omitted). Accordingly, the District Court first considered whether an ambiguity existed in the written insurance contracts. Contractual language is unambiguous if it is capable of only one reasonable interpretation. See, e.g., Toy Wright Ventures, LLC v. Radlo Foods, LLC, 635 S.E.2d 862, 862-63 (Ga. Ct. App. 2006). The language should be given "its ordinary meaning or common signification as defined by dictionaries, because they supply the plain, ordinary, and popular sense unless the words are terms of art." W. Pac. Mut. Ins. Co. v. Davies, 601 S.E.2d 363, 367 (Ga. Ct. App. 2004) (citations omitted).

Purporting to apply these legal principles, the District Court agreed with MetLife that the unambiguous language of the policies did not require the insurer to offer a "non-smoking policy." In the process, the District Court considered and rejected Appellants' theory that MetLife committed a breach by charging them premiums at a higher "smoker-

F.3d 271, 276 (3d Cir. 2002). We therefore may affirm an order granting summary judgment if it appears that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See, e.g., id.

5

based" rate.  It also refused to find that the contractual language was at least ambiguous with respect to the calculation of the premium rates.  On appeal, Appellants argue at some length that the District Court's contractual ruling was erroneous.  Nevertheless, after reviewing the District Court's  thorough opinion, the parties' various contentions, and the record on appeal, we conclude that the District Court properly granted summary judgment in favor of MetLife as to this breach of contract cause of action.

As the District Court noted, "Plaintiffs repeatedly assert that Defendant charged them a 'higher rate,' but do not assert that the rates due and agreed upon are anything other than those clearly stated in the policy." (JA13.)  On the contrary, it appears that MetLife promised to provide life insurance coverage in exchange for disclosed premium payments, and fully honored its part of the bargain.

In an effort to show that the contractual language was at least ambiguous with respect to the smoking/non-smoking issue, Appellants have relied heavily on the negative answers to the application question regarding tobacco use.   The applications were made a part of the eventual insurance contracts, and Appellants also agreed that "[m]y statements are the basis of any policy issued." (See, e.g., JA104.)  But, as the District Court noted, it was *Appellants themselves* who agreed to be bound by their own application statements. Neither the applications nor the policies expressly required *MetLife* to use such statements in any particular way with respect to the calculation of premium rates.  Contrary to Appellants' characterizations, the District Court's approach does not render the application language and the answers regarding tobacco use superfluous or meaningless.

6

In fact, it appears that the applications ultimately allowed Appellants to obtain life insurance for their children and grandchildren. Finally, Appellants still "have not pointed to any [case law] finding that the pertinent language can reasonably be read to obligate an insurer, without express agreement, to give a particular weight or effect to each such statement in its rate calculation method." (JA14.)

Likewise, the District Court properly rejected Appellants' reading of the word "Standard" in the policies themselves. Relying on WordPerfect's dictionary, it found the term to mean "'of no special quality.'" (JA15.) While Appellants take issue with the use of a wordprocessor dictionary and the definition offered, MetLife points out that the on-line version of The American Heritage Dictionary likewise defines the term as "'usual, common, or customary.'" (Appellee's Br. at 38.) According to Appellants, "the common fact that the 'usual' juvenile is a 'non-smoker' combined with the 'non-smoking' basis stated in Plaintiffs' policies would lead an average lay insured to only one reasonable conclusion: that their policies and premiums are non-smoking." (Appellant's Reply Br. at 18.) However, it appears clear that Appellants' efforts to add terms to the parties' agreements or to create ambiguity are ultimately without merit. The "Policy Classification . . . . Standard" language, far from "suggest[ing] to Plaintiffs a child without health concerns," merely indicated that the children and grandchildren received the customary policy classification for juveniles. (JA15.)

Appellants also turn to the policy illustrations provided by the representative, as well as the Consumer Privacy Notice. The policy illustrations did identify the risk class

7

as "Standard Nonsmoker."  (See, e.g., JA245.)  The District Court, however, correctly

found that the illustrations "remain nothing more than parol evidence," which were "'not

admissible to create an ambiguity where none exists.'" (JA17 (quoting Perrett v. Dollard,

338 S.E.2d 56, 57 (Ga. Ct. App. 1985))).  Furthermore, the premiums ultimately charged

by MetLife were consistent with the premium figures included in the illustrations.  On the

other hand, Appellants argue that MetLife failed to meet its alleged obligation under the

Consumer Privacy Notice to inform them if it could not provide the coverage requested or

could only provide such coverage on a modified basis.  Even assuming that the Consumer

Privacy Notice was actually incorporated into the contracts between the parties, we

conclude there was never any modification requiring notification.  We accordingly reject

the notion that MetLife was contractually obligated to provide information to Appellants

of its specific rate calculation method, at least without a prior request to do so.[2]

In the end, the breach of contract claim has presented no genuine issue of material

fact, and MetLife is clearly entitled to judgment under Georgia law.   The District Court's

ruling was, in turn, supported by other district court decisions rejecting similar claims

with respect to juvenile life insurance policies.  See, e.g., Alleman v. State Farm Life Ins.

Co., 508 F. Supp. 2d 452, 453-59 (W.D. Pa. 2007); Thompson v. Am. Gen. Life &

Accident Ins. Co., 448 F. Supp. 2d 885, 886-89 (M.D. Tenn. 2006).  We therefore

---

[2] Appellants appear to argue that MetLife violated a Georgia statutory provision regarding the disclosure of premiums and "conditions of insurance."  We, however, do not address this statutory argument because it was not raised by Appellants in their initial appellate brief.  See, e.g., Kost v. Kozakiewicz, 1 F.3d 176, 182 & n.3 (3d Cir. 1993).

conclude that the District Court was correct to grant summary judgment in favor of MetLife.

## III.

For the foregoing reasons, we will affirm the District Court's summary judgment ruling.